## State of Connecticut *v.* Kevin Conroy
## (10914)

Peters, C. J., Healey, Shea, Dannehy and Santaniello, Js.

Argued October 3—decision released December 4, 1984

*Daniel D. Skuret,* with whom were *Ronald Stankye* and, on the brief, *Michael Moher,* for the appellant (defendant).

*William Domnarski,* deputy assistant state's attorney, with whom, on the brief, was *Susan Moch,* assistant state's attorney, for the appellee (state).

DANNEHY, J. The defendant, Kevin Conroy, was convicted by a jury of the crimes of burglary in the third degree in violation of General Statutes § 53a-103[1] and larceny in the third degree in violation of General Statutes § 53a-124.[2] On this appeal, the defendant claims the trial judge erred when he: (1) allowed evidence for which an adequate chain of custody had not been established; (2) admitted prejudicial hearsay testimony; (3) admitted expert testimony for which a proper foundation had not been laid; (4) excluded evidence of a third party's involvement in the alleged crimes; and (5) threatened, in the presence of the jury, to hold defense counsel in contempt of court.[3] We find no error.

The jury could reasonably have found the following facts. Sometime between the afternoon of August 11, 1980, and the afternoon of August 12, 1980, a house located at 127 Hurley Road in Oxford was forcibly entered. The glass in the two windows adjacent to the back door was broken and entry gained through one of the windows. A television set, a radio, a camera, money and two calculators that were in the house were stolen. Several fingerprints found on a storm window and a single fingerprint found on a piece of broken window glass were identified as those of the defendant. The defendant offered an alibi defense.

---

[1] General Statutes § 53a-103 provides: "(a) A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein.

"(b) Burglary in the third degree is a class D felony."

[2] At the time of the alleged crime, General Statutes § 53a-124 provided in pertinent part: "(a) A person is guilty of larceny in the third degree when: (1) The value of the property or service exceeds fifty dollars . . . .

"(b) Larceny in the third degree is a class B misdemeanor."

[3] A sixth claim of error, relating to the obtaining and use of a card bearing the defendant's fingerprints, was withdrawn at oral argument.

I

The defendant's first claim of error concerns the admission into evidence of the storm window upon which his fingerprints were found.[4] The defendant argues that the state failed to lay a foundation which adequately established the identity and unchanged condition of the glass from the time it was removed from the victim's house to the time it was presented at trial, and that therefore the admission of the window into evidence was error. We disagree.

The Connecticut state trooper who initially investigated the crime, Richard Connors, testified that he dusted the window and discovered fingerprints thereon. He then removed the window, marked it with an evidence tag, and stored it in a locked safe in his office where it remained until he brought it to the evidence locker of the Southbury state police barracks. Trooper Dennis Coyle testified that he transported the window from this evidence locker to the state forensic laboratory in Meriden; there, he gave it to Trooper Ronald Luneau. Luneau testified that he received and studied the window at the laboratory; and Trooper Thomas Guyette testified that he picked up the window from Luneau, and returned it to the evidence room at the Southbury barracks. Connors, Coyle, Luneau and Guyette each identified the window in court, and all but Luneau stated that it was in substantially the same condition as when it had been in their possession.

When the authenticity of an article of evidence is challenged, "[t]here is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article . . . has been tampered with; in each case the

---

[4] The defendant challenges the admission of the storm window only and makes no claim regarding the admission of the small piece of broken glass which bore one of his fingerprints.

trial court must satisfy itself in reasonable probability that the [article] had not been changed in important respects." *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903 (1972). Here, although there was no direct testimony describing the storage of the window while it was at the laboratory in Meriden or in transport from the Southbury barracks to the court, every other link in the chain of its custody was carefully established. There was also ample testimony establishing the window's unchanged condition as produced at trial. Given this record, the trial court did not abuse its discretion in admitting the window into evidence. See *State* v. *Asherman,* 193 Conn. 695, 722, 478 A.2d 227 (1984); *State* v. *Piskorski,* 177 Conn. 677, 696–97, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

## II

The defendant next maintains that the trial court erroneously admitted evidence that was both hearsay and prejudicial when it allowed Connors to testify that he "received a phone call from Sergeant Tucci, of the Woodbridge Police Department, in regards [sic] to Kevin Conroy being involved in burglaries." The state concedes that the admission of this testimony was error, but contends that the error was harmless. We agree that the error was harmless.

It is well settled that evidence of similar but unconnected crimes is generally not admissible to prove a criminal defendant's guilt. Such evidence can show no more than the defendant's bad character or an abstract disposition to commit a crime; it provides no proof of guilt of the specific offense in question. *State* v. *Gilligan,* 92 Conn. 526, 531, 103 A. 649 (1918); see *State* v. *Esposito,* 192 Conn. 166, 169, 471 A.2d 949 (1984). Given the state's concession of error, the sole issue is whether the admission of Connors' testimony prejudi-

cially affected the jury's verdict. See *State* v. *Tropiano,* 158 Conn. 412, 427, 262 A.2d 147 (1969), cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288 (1970). Because the defendant did not claim at trial that the error deprived him of a constitutional right, he bears the burden of proving its harmfulness.[5] *State* v. *Januszewski,* 182 Conn. 142, 174, 438 A.2d 679 (1980). Relying only on a conclusory statement of prejudice, the defendant has failed to meet this burden. The challenged testimony conveyed to the jury the general idea that the defendant was thought by another police officer to have been "involved" in other burglaries. Neither the details of the alleged involvement nor the basis for Tucci's belief were alluded to before the jury. Mention of the telephone call was made only once during the state's case and never repeated.[6] Moreover, it was made in the course of Connors' explanation of how he

[5] At trial, the defendant objected to the testimony in question on two grounds: that it was hearsay, and that its prejudicial effect outweighed its probative value. He now raises as a third objection the claim that before the evidence of his involvement in other burglaries was admitted he had planned to exercise his fifth admendment right not to testify, but that Connors' testimony forced him to take the stand. If this constitutional argument were before this court, it would be the state's burden to prove the trial court's error harmless beyond a reasonable doubt. See *Chapman* v. *California,* 386 U.S. 18, 24, 26, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). Although claims not raised at trial are normally not reviewable here, constitutional claims made for the first time on appeal may be properly pleaded before this court under certain exceptional circumstances. See *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The exceptional circumstance relevant here is one that "may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. Because the record is silent as to the reason for the defendant's decision to testify, we do not consider the defendant's fifth amendment claim. See *State* v. *Cohane,* 193 Conn. 474, 480 n.5, 479 A.2d 763 (1984); *State* v. *Johnson,* 188 Conn. 515, 519, 467 A.2d 1237 (1982). Indeed, our comprehensive review of the record on this issue leads as easily to the conclusion that the defendant had planned to testify as to one that he had originally decided not to take the stand.

[6] The defendant himself later gave testimony describing his involvement in other burglaries.

conducted his investigation into the crime, not as part of an attack on the defendant's character. The defendant failed to request a cautionary instruction which would have emphasized to the jury the limited purpose of the testimony. This failure further weakens the defendant's claim of prejudice. See *State* v. *Falcone,* 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). The admission of this testimony, even though error, was harmless.

## III

In his next claim of error, the defendant contends that the trial court erred in allowing the expert testimony of Luneau, a certified latent fingerprint examiner. The defendant argues that Luneau's conclusion that the fingerprints found on the glass removed from the scene of the burglary matched the fingerprints of the defendant was inadmissible because it was not made in response to a hypothetical question. We do not agree.

Luneau was qualified without objection as an expert witness. He testified that he took photographs of sixteen fingerprints found on the glass and compared the photographs with a police card bearing the defendant's fingerprints. Further, he testified that he also prepared a chart, exhibited to the jury, which made a point-by-point comparison of an enlargement of one of the fingerprints found on the glass with an enlargement of one of the defendant's fingerprints.[7] Luneau was then asked if he had arrived at any conclusion as a result of his examination. He answered that the fingerprints found on the glass were identical to those of the defendant. Luneau's answer was based on the personal knowledge he had acquired through observation and study of the relevant evidence. It was therefore perfectly proper to elicit his testimony through direct questioning. That many experts must rely on the observations

[7] The glass, the photographs, the fingerprint card and the chart were all admitted into evidence.

of others in the formation of their ultimate opinion is no reason to require one with actual, first-hand knowledge to testify in response to a hypothetical query. See *Donch* v. *Kardos,* 149 Conn. 196, 201, 177 A.2d 801 (1962); Tait & LaPlante, Handbook of Conn. Evidence (1976) § 7.16 (f).

## IV

The defendant next raises the issue of his unsuccessful attempts to introduce evidence that one Lawrence Munko had participated in the crime. First, the defendant's attorney asked Connors: "Now, of your own personal knowledge, do you know of anyone else convicted of this crime of burglary and larceny, on August 12, 1980, of the property at 127 Hurley Road, in Oxford?" Later, defense counsel asked the defendant: "Now, at the time Lawrence Munko testified in December of 1980, in this court [at a trial of the defendant for a separate charge of burglary] did he also make admissions with regard to the crime, or did he actually make—did he give testimony with regard to the crime which was— you're being tried right now?" The trial court sustained the state's objections to both questions. The defendant argues that these exclusions were error in that they prevented him from presenting exculpatory evidence. The defendant further argues that the trial court's rulings were erroneous because they precluded him from laying a foundation for a request to charge that the jury could draw an inference adverse to the state from its failure to call Lawrence Munko as a witness. Neither argument is persuasive.[8]

---

[8] The state contends that these claims were not preserved for review because the defendant did not make an offer of proof when faced with the state's objections. While the defendant failed to make an offer of proof in response to the first objection, he did make an offer when the state made its second objection. In addition, Munko's participation in the present crime was set forth in the arrest warrant application which was part of the record both at trial and here and the thrust of the questioning was hence clear. We accordingly turn to the merits of these claims.

A

The defendant contends that the excluded evidence was admissible under an exception to the hearsay rule as a statement against penal interest exculpatory to the defendant.[9] This court delineated the requirements for the admission of such a statement in *State* v. *DeFreitas*, 179 Conn. 431, 426 A.2d 799 (1980), and again in *State* v. *Gold*, 180 Conn. 619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). A prerequisite to the use of this exception is the unavailability of the declarant, in this case Munko. See *State* v. *Gold*, supra, 630; *State* v. *DeFreitas*, supra, 440–42. The defendant made no allegation that Munko was unavailable to testify at the defendant's trial. The trial court was therefore correct in sustaining the state's objections to questions that would have elicited hearsay recitals of Munko's statements.[10]

B

The defendant also claims the exclusions were erroneous because they prevented him from requesting a *Secondino* charge.[11] A jury instruction which allows the drawing of an adverse inference against a party who fails to call a witness can be given only if it is shown that that witness is available and that the witness is

---

[9] At least one of the state's objections was made and sustained on relevancy grounds, and the state presses the alternative argument here that evidence of Munko's role in the present crime is irrelevant since it does not necessarily exculpate the defendant. The defendant, on the other hand, addresses himself in this appeal solely to the hearsay issue. Because we decide against the defendant on this issue, we need not discuss the question of relevancy.

[10] That Munko pleaded guilty to the present crime in a separate proceeding at which Connors was present was conceded. The statement for which a hearsay recapitulation was sought by questioning Connors was hence Munko's plea.

[11] See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960).

one whom the party would naturally be expected to produce. *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675, 165 A.2d 598 (1960); see *State* v. *Daniels,* 180 Conn. 101, 113–14, 429 A.2d 813 (1980). Presumably, the defendant is contending that the trial court's rulings precluded him from meeting the second requirement.[12] The defendant made no attempt, however, to adduce proof of Munko's availability. Because there was no evidence before the trial court on this point, the defendant cannot prevail on this claim of error.[13]

## V

The defendant's last claim is that the trial court erred when, in the presence of the jury, it threatened to hold his attorney in contempt of court. Defense counsel had put the defendant on the stand and had inquired extensively about other crimes of burglary charged against him. As previously described, defense counsel tried to elicit Munko's testimony in the defendant's trial on one of these earlier charges concerning the crime involved in this case. The trial court sustained the state's objection to such questioning, stating: "that is beyond our camera [sic] now to consider that other trial. That is not presently before this jury. We have before this jury a very specific allegation as to a crime apart from that other one."

During defense counsel's argument to the jury, the following colloquy then occurred:

"Mr. Skuret: So what are we here for? Why are we here with the trial of this case if it's so clear-cut?

[12] Given the paucity of evidence linking the defendant to the crime, Munko was arguably a witness whom the state would naturally have been expected to call. We note, however, that the defendant did not challenge the sufficiency of the evidence against him.

[13] It may seem inconsistent to rule against the defendant both for failing to show Munko's unavailability and for failing to show Munko's availability. The defendant, however, did not simply fail to establish either unavailability or availability; he made no allegation whatsoever on the issue. Any apparent inconsistency is thus of the defendant's own making.

"I'll tell you why we're here. We're here because my client came into the office and came in with four cases, and you've heard about the four cases—

"Miss Moch: Your Honor, I'm going to object to anything that's outside this case that is on trial. I don't care how many burglaries he was accused of. I think that is totally improper, and normally the State would not object.

"Obviously, the defendant pled not guilty and that is why we are here trying this case, and to say it's for any other reason is totally improper.

"The Court: Counselor—

"Mr. Skuret: Let me explain something, your Honor.

"The Court: No.

"Mr. Skuret: It's a situation—

"The Court: Mr. Skuret.

"Mr. Skuret: I want to address the Court. I have had an objection—

"The Court: Mr. Skuret. I'm telling you I don't need to be addressed on this, and kindly refrain from extraneous materials that have nothing to do with this case, no probative force with this case, Mr. Skuret.

"If you dare to do that I am going to hold you in contempt.

"Mr. Skuret: Well—

"The Court: I do not need to be addressed by you about anything. I am ruling now to eliminate any talk about four cases that came into your office that have absolutely nothing to do with the proof of this trial."

The defendant did not object to the trial court's warning; nor did he request a jury instruction that no inference adverse to the defendant be drawn from the

incident. We need not consider any claim of error which is not distinctly raised at trial. Practice Book § 3063. Because of the understandable reluctance of an attorney to object to a threat of contempt, however, we will address the defendant's claim. See *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984).

The act complained of was a single, short incident that took place during a four day trial. The defendant does not explain how the threat against his attorney prejudiced the jury against him; he merely asserts that it did so. Further, the warning was issued during final argument and thus did not hinder the defendant's presentation of evidence. Cf. *State* v. *Hardwick,* 1 Conn. App. 609, 475 A.2d 315 (1984). While the better practice would have been for the trial court to have issued its warning in the absence of the jury or to have given a curative instruction; see *State* v. *McClain,* 171 Conn. 293, 299–300, 370 A.2d 928 (1976); the trial court's action in the circumstances here was not erroneous.

There is no error.

In this opinion PETERS, C. J., HEALEY and SANTANIELLO, Js., concurred.

SHEA, J., concurring. I agree with the court's opinion except for the Catch-22 that has been created by relying upon the failure of the defendant to prove the *unavailability* of Lawrence Munko as a ground for excluding his hearsay statements against penal interest and, next, upon the failure to establish Munko's *availability* as a prerequisite to a request for a 'missing witness' charge. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960). It defies logic to presume that Munko was available and unavailable at the same time, as if we could have it both ways. Courts ought not to indulge in such convenient fictions.

I concur with the court's disposition of the claim for admission of the statements against penal interest because of the failure to show that Munko was not available to testify. With respect to the claim of admissibility of the statements as a basis for requesting a *Secondino* charge, (1) no such ground of admissibility was raised at trial as required by Practice Book § 288;[1] (2) since an essential prerequisite for the penal interest exception to the hearsay rule was not established, the evidence was inadmissible for any purpose; and (3) even if responses to the questions relating to Munko's involvement in this crime had been permitted, the circumstance of his complicity, which they might have elicited, would not indicate that his relationship to the state was such that the state could naturally have been expected to produce his testimony. Contrary to the position taken in a footnote of the opinion,[2] that "Munko was a witness whom the state would naturally have been expected to call," his status as a possible accomplice would not warrant a charge that an unfavorable inference should be drawn because of the failure of the state to produce him. Unless an accomplice has turned state's evidence by implicating a defendant, the state can hardly be expected to call him as a witness. It would be closer to reality to draw an adverse inference against the defendant for failing to produce a witness who conceivably might have exculpated him.

Accordingly, I agree with the result.

---

[1] "[Practice Book] Sec. 288. OBJECTIONS TO EVIDENCE. Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he desires it to go upon the record, before any discussion or argument is had. Argument upon such objection shall not be made by either party unless the court requests it and, if made, must be brief and to the point. An exception to the ruling must be taken in order to make it a ground of appeal."

[2] See footnote 12 of the majority opinion.