[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff commenced this action against the defendant on June 16, 1993, which was subsequently amended on March 6, 1994.
The amended complaint alleges two counts of negligence (counts one and two), negligent infliction of emotional distress (count three), intentional interference with custodial rights (count four), civil conspiracy (count five), and intentional infliction of emotional distress (count six).
By motion dated May 13, 1994, the defendant filed a Motion to Strike all six counts of the amended complaint. The defendant claims that counts one through three should be stricken on the ground that they all allege medical malpractice and not simple negligence, and sounding in medical malpractice, the defendant owed no duty to the plaintiff in this case. Defendant also seeks to strike paragraph 28 of count one (which is also incorporated by reference in counts three and six) as Connecticut law does not recognize filial consortium. The defendant further claims that counts four through six should be stricken as these three remaining counts all fail to allege essential elements to sustain a cause of action for interference with custodial rights, civil conspiracy, and intentional infliction of emotional distress respectively.
Prior to addressing the issues raised in defendant's motion, a summary of the factual background in this case is helpful. In November of 1988, the plaintiff and his then wife, Sharon Zamstein, were involved in a dissolution proceeding. During the pendency of that proceeding, there were allegations made by the plaintiff's wife that he had sexually abused his two children. In September of 1989, the plaintiff was arrested on criminal charges related to the sexual abuse allegations. At about this same time, the defendant, to whom plaintiff's ex-wife had been referred by her divorce attorney, was referred the sexual CT Page 11932 abuse case. The defendant is a psychiatrist, licensed to practice in the state of Connecticut, who was retained to perform a sexual abuse evaluation of the plaintiff's two children. The defendant met with the two children on several occasions, videotaping each session. Subsequent to these interviews, the defendant rendered his opinion as to the alleged sexual abuse allegations and presented that information to the State Attorney's Office with an edited videotape.
In January of 1991, the Family Court dissolved the marriage of the plaintiff from his then wife, Sharon Zamstein. That court also awarded joint custody of the minor children to both the plaintiff and Sharon Zamstein. The criminal trial proceeded in July of 1991 and continued for some three months. In November of 1991, the plaintiff was acquitted of all criminal charges. The plaintiff's complaint is based on allegations of the defendant's misconduct and his participation as outlined in this chronology.
A motion to strike is the appropriate motion to challenge the legal sufficiency of a pleading. Ferryman v. Groton,212 Conn. 138, 142 (1989). Section 152 of the Practice Book states in full:
 Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim, or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint, counterclaim, or cross complaint, or (3) the legal sufficiency of such complaint, counterclaim, or cross complaint, or any count thereof, because of the absence of any necessary party, or (4) the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts, or (5) the legal sufficiency of an answer to any complaint, counterclaim, or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof. CT Page 11933
In reviewing and deciding a motion to strike, the court is not permitted to consider factual representations made at oral argument nor may it accept affidavits or other documentary proof in support of the motion. The facts alleged must be construed in a manner most favorable to the pleader. Amodia v.Cunningham, 182 Conn. 80, 82 (1980). Thus, a pleading that "on its face is legally insufficient" is subject to a motion to strike, even though facts may exist which, if properly pleaded, would establish a course of action upon which relief could be granted. Baskin's Appeal from Probate, 194 Conn. 623, 640
(1984). A motion to strike raising any claims of legal insufficiency shall separately set forth each such claim and shall distinctly specify reason(s) for each such insufficiency. Practice Book, § 154. Board of Education v. Dow Chemical Co., 40 Conn. Sup. 141,142 (1984).
A. Negligence Claims.
Counts one, two, and three of plaintiff's complaint are captioned negligence, negligence, and negligent infliction of emotional distress respectively. The defendant argues that all three of these counts sound in medical malpractice, a specific and recognized form of negligence when alleging actions against a physician. The plaintiff contends that his specific allegations deal with the action the defendant took in editing the videotapes, and that these actions do not rise to the level of medical malpractice but do sound in straight negligence.
On questioning during oral argument on the motion, both parties conceded that if the court found that these three counts sounded in malpractice as opposed to negligence, then the court would have to determine whether or not the defendant owed the plaintiff a duty of care. In addition, the plaintiff agreed that whether or not such a duty of care would exist between the plaintiff and the defendant under the facts of this case would require the court to weigh competing public policy: the ability of an individual falsely charged with sexual abuse to have a cause of action against a physician who was the evaluator v. the ability of the court and parties to have physicians available to interview children, conduct independent sexual evaluations, and render their opinions.
This case appears to be one of first impression in Connecticut on the facts of this case. The ultimate question CT Page 11934 which this court must decide is whether a physician (in this case, a psychiatrist) owes a duty of care to the alleged perpetrator of sexual abuse to not negligently misdiagnose the alleged victim.
It is this court's opinion that actions based on a medical doctor's exercise of his professional skill are medical malpractice and do not sound in straight negligence. The fact that the plaintiff is complaining about the way the defendant may have edited videotapes of interviews does not remove counts one, two, and three from the medical malpractice arena. As the plaintiff himself argues in his memorandum in opposition to this motion at page 16: "A psychiatrist evaluating a child for possible sexual abuse clearly owes a duty to exercise the same level of care of the reasonably prudent psychiatrist under similar circumstances to the parents of that child. . .". Plaintiff does not cite the negligence/reasonable person standard but cites the medical malpractice standard: the reasonably prudent psychiatrist.
It should further be noted that the plaintiff filed a Certificate of Good Faith pursuant to § 52-190a at the time of the filing of its original complaint in June of 1993. That statutory section specifically is required in medical malpractice actions against health care providers.
Having determined that the first three counts of the plaintiff's complaint sound in medical malpractice as opposed to negligence, this court must now determine whether or not the elements necessary to sustain a medical malpractice cause of action exist.
Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. Barnes v. Schlein, 192 Conn. 732 (1984). A physician is required by law to exercise the degree of skill, care and diligence that is customarily demonstrated by physicians in the same line of practice. Logan v. GreenwichHospital, Assn., 191 Conn. 282 (1983).
The four essential elements of a malpractice action are that (1) the defendant must have a duty to conform to a particular CT Page 11935 standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury.LaBieniec v. Baker, 11 Conn. App. 199, 202-203 (1987).
In order to satisfy element number one of a malpractice action, then, there must be a duty of care owed to the plaintiff by the defendant. The physician must exercise such reasonable skill and diligence in all aspects of providing care and treatment to a patient. Allen v. Guilano, 144 Conn. 573
(1957). In Connecticut in a medical malpractice action, it is therefore necessary for the plaintiff to establish a physician-patient relationship. Sackter v. St. Onge, 8 Conn. L. Rptr. (1993). See also Pokorny v. Shafer,11 Conn. L. Rptr. 151 (April 11, 1994). No where in any of the allegations raised in any of plaintiff's first three counts is it alleged that the defendant and the plaintiff had a physician-patient relationship. In fact, plaintiff's complaint specifically states in count one, paragraph 13: "At no time during his evaluation of `R' and `J' did the defendant ever meet with or speak with the plaintiff." That same language is also incorporated in counts two and three of the complaint. Since the defendant never met nor spoke with the plaintiff, there is no physician-patient relationship. Without such a relationship, the first element ofLaBieniec can not be satisfied. Without this element, there is no cause of action for medical malpractice.
The plaintiff asks this court to find a duty of care owed by the defendant to the plaintiff despite the nonexistence of a physician-patient relationship. The plaintiff feels there must by some recourse for the negligence of the defendant when an individual is falsely accused of sexual abuse. This court is not unmindful of the probable trauma to an individual so falsely accused nor is this court unsympathetic to the plight of such an individual. To hold a physician who had no relationship with such an individual and owed that individual no duty would not correct this situation, however. On the contrary, extending such a duty where none exists would, in this court's opinion, severely jeopardize the ability to procure much needed sexual abuse evaluations of children. If an evaluator is held to have a duty to the alleged perpetrator, which is in fact what the plaintiff is asking this court to do, it will become difficult, if not impossible, to obtain the professional services of such medical evaluators. This court refuses to extend such a duty at CT Page 11936 the risk of ultimately harming the very group which we set out to protect: the sexual abuse victims, the children.
Accordingly, the defendant's motion to strike counts one, two, and three of the plaintiff's complaint is granted.
B. Filial Consortium
The defendant also moves to strike paragraph 28 of count one of plaintiff's complaint which states in pertinent part: ". . . the plaintiff has had the companionship, support, love, affection and paternal relationship between himself and his children irreparably damaged." Even though this court has just stricken count one, this paragraph has been incorporated in count six of the plaintiff's complaint, alleging intentional infliction of emotional distress.
In oral argument, plaintiff once again conceded that there is no case in Connecticut which specifically recognizes filial consortium. Plaintiff asks this court to change the law. Our Connecticut courts have already ruled on this. "The right to consortium is said to arise out of the civil contract of marriage and as such, does not extend to the parent-child relationship. "Mahoney v. Lensink, 17 Conn. App. 130, 141 (1988). See also Hopson v. St. Mary's Hospital, 176 Conn. 485 (1979). In accord with these decisions, the court grants defendant's motion to strike paragraph 28 of count one of the plaintiff's complaint which is currently part of count six of the complaint.
C. Intentional Interference with Custodial Rights
In count four of his complaint the plaintiff alleges that due to the defendant's conduct, "the plaintiff has had his custodial rights and the companionship, support, love, affection, and paternal relationship between himself and his children irreparably interfered with, all to his detriment and damage." The defendant moves to strike this count, claiming that in order for the plaintiff to prevail on this count, the plaintiff must show an unlawful and physical absence of the child from the home, of a parent legally entitled to custody. Plaintiff claims that he is entitled to the custody and companionship of his children. He further claims that the defendant's deliberate actions deprived him of his children against his will, and this satisfies a cause of action for intentional interference with custodial rights. CT Page 11937
Connecticut recognizes the tort of child abduction or custodial interference. As stated in the Restatement (Second) of Torts (1977), Section 700: "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent." See Marshak v. Marshak,226 Conn. 652 (1993).
The plaintiff has not alleged that his children were, abducted. He has not alleged that his children were compelled or induced to leave him, their father. Plaintiff has only alleged that because the defendant conducted the evaluation on his children and then edited the videotapes that comprised a summation of his interviews with the plaintiff's children, defendant has interfered with plaintiff's custodial rights. This court does not find that such allegations are enough to satisfy a cause of action for intentional interference with custodial rights. Furthermore, according to the chronology recited to the court, at the time that the defendant was retained to conduct the sexual abuse evaluation, the Family Court had already entered a restraining order against the defendant, providing for supervised visitation only with his children. Consequently, the defendant could not be liable for depriving the plaintiff of the companionship of his children since a proper court of jurisdiction had already made that decision prior to the defendant's initial involvement with the case. Therefore, defendant's motion to strike the fourth count of plaintiff's amended complaint is granted.
D. Civil Conspiracy
The plaintiff alleges in count five of his complaint that "the defendant, Sharon Zamstein and others knowingly joined together in a conspiracy for the purpose of depriving the plaintiff of his constitutionally protected rights to the companionship, care, custody and management of his children." Defendant claims that in order to satisfy the standard for a civil conspiracy, the plaintiff must allege that the defendant engaged in an "unlawful act". The defendant asks: what did he do which was illegal or unlawful in examining the children and serving as a witness for the State in its criminal action against the plaintiff? Defendant argues that he cannot be liable for having done something (evaluating the children) which was lawful. CT Page 11938
The essential elements of civil conspiracy are: (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) and an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to a plaintiff. Williams v. Maislon,116 Conn. 433 (1933).
In the instant case plaintiff alleges that the defendant, Sharon Zamstein, and others joined together; element one is satisfied. They prepared the edited videotape and rehearsed the defendant's testimony; the second element is satisfied. While the evaluation itself was a lawful activity, if it was conducted by criminal or unlawful means (i.e. editing done with a criminal or unlawful intent/rehearsed testimony false, misleading, and incomplete), then the lawful act would have been conducted by unlawful or criminal means. It is alleged that the act was done by these named individuals (defendant, Sharon Zamstein, and others) in furtherance of their scheme; the third element is satisfied. Finally, the plaintiff claims damage in that his custodial rights and paternal relationship with his children were irreparably interfered with; the fourth element is satisfied.
On this basis, this court denies the defendant's motion to strike the fifth count of the plaintiff's amended complaint.
E. Intentional Infliction of Emotional Distress
In count six of his complaint, the plaintiff alleges that the defendant's conduct was outrageous, it was intended to or likely to cause emotional distress to the plaintiff, and the plaintiff has suffered severe emotional distress and anguish as a result of this conduct. The defendant argues that there has not been any extreme or outrageous conduct, claiming that the act of examining a child for sexual abuse and reporting the results is not extreme or outrageous.
As set out in DeLaurentis v. New Haven, 220 Conn. 225
(1991), four elements must be satisfied to sustain a cause of action for intentional infliction of emotional distress. First, the actor must have intended to inflict emotional distress or know or should have known that his conduct would do so. Second, the conduct must be extreme and outrageous. Third, the conduct CT Page 11939 must be the cause of the plaintiff's distress. Fourth, the emotional distress sustained by the plaintiff must be severe. See also Petyan v. Ellis, 200 Conn. 243 (1986).
This court adopts the standard articulated in Brown v.Ellis, 40 Conn. Sup. 165 (1984). That case states at 167-168 that the "question of whether an actor's conduct is sufficiently extreme and outrageous to impose liability is one for the jury to decide . . . Where reasonable men may differ, it is for the jury, subject to the control of the court to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Since the question of outrageous and/or extreme conduct is for the jury to decide, if such conduct is alleged, it is not properly the subject of a motion to strike.
Accordingly, defendant's motion to strike the sixth count of plaintiff's amended complaint is denied.
Summary
Based on the foregoing analysis and decision, the court finds as follows:
1. As to count one, the motion to strike is granted.
2. As to count two, the motion to strike is granted.
3. As to count three, the motion to strike is granted.
4. As to count four, the motion to strike is granted.
5. As to count five, the motion to strike is denied.
6. As to count six, the motion to strike is denied.