STATE OF CONNECTICUT *v.* KERRI LYNN PATAVINO
(AC 16602)

Spear, Hennessy and Sullivan, Js.

Argued November 12, 1998—officially released January 26, 1999

*H. Jeffrey Beck,* for the appellant (defendant).

*Richard F. Jacobson,* supervisory assistant state's attorney, with whom, on the brief, was *Stephen J. Sedensky III,* assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant appeals from the judgments[1] of conviction, rendered after a jury trial, of six counts of risk of injury to a child in violation of General Statutes

---

[1] The defendant was convicted on two separate informations that were tried together. In docket number CR 95-109820, the defendant was convicted of four counts of sexual assault in the second degree and five counts of risk of injury to a child. In docket number CR 95-110659, the defendant was convicted of sexual assault in the second degree, risk of injury to a child, burglary in the third degree and larceny in the sixth degree.

§ 53-21, five counts of sexual assault in the second degree in violation of General Statutes § 53a-71, burglary in the third degree in violation of General Statutes § 53a-103 and larceny in the sixth degree in violation of General Statutes § 53a-125b. She claims that the trial court (1) improperly failed to address defense counsel's motion to withdraw, or, alternatively, abused its discretion by, sub silentio, denying the motion and (2) deprived the defendant of a fair trial by (a) threatening defense counsel with contempt in the presence of the jury, (b) chastising and disparaging defense counsel to such a degree that he could not effectively represent the defendant and (c) improperly instructing the jury during the trial in a way that bolstered the testimony of the victim. We affirm the judgments of the trial court.

The jury reasonably could have found the following facts. The defendant, a school bus driver, was twenty-six years old at the time of these offenses. The victim was fifteen years old and regularly rode the bus that the defendant operated. Between February and June of 1995, the defendant engaged in sexual activity with the victim and gave the victim beer and crack cocaine. In addition, the defendant entered the victim's home without permission and took certain items from the victim's room. This appeal follows the defendant's conviction on all of the charges.

I

A

The defendant first claims that the trial court failed to address her counsel's motion to withdraw. During a lengthy colloquy between the defense counsel and the trial court, defense counsel complained that he did not feel that he could effectively represent the defendant because the trial court had threatened to hold him in contempt. After the state's attorney mentioned that the trial court should address defense counsel's statement

that he could not be an effective attorney, defense counsel orally moved to withdraw. The trial court's response was, "Move on. Bring the jury out."

Our Supreme Court has stated that when a trial court decides not to consider motions filed with it, it is "the functional equivalent of a denial of those motions." *Ahneman* v. *Ahneman*, 243 Conn. 471, 480, 706 A.2d 960 (1998). Pursuant to the rationale of *Ahneman*, we conclude that the trial court's failure to act was in fact a denial of the oral motion to withdraw.

### B

The defendant next asserts that the denial of the motion to withdraw was an abuse of the trial court's discretion. We disagree.[2]

" 'The standard when reviewing a denial of a request for alternate counsel [and of a motion to withdraw] is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request.' " *State* v. *Morico*, 14 Conn. App. 140, 144, 539 A.2d 1033, cert. denied, 208 Conn. 812, 546 A.2d 281 (1988). Practice Book § 3-10[3] requires that a trial court must find good cause in order to grant a motion to withdraw. The cause claimed here is that the trial court intimidated defense counsel into ineffectiveness by threatening him with contempt. Counsel also stated that he felt that he was not being allowed

---

[2] The state claims that we need not consider any issues regarding the motion to withdraw because the motion was not in writing as required by Practice Book § 11-1 and was not served on other attorneys of record as required by Practice Book § 3-10 (a). Section 11-1 excepts from its operation motions made during trial and therefore no "service" on appearing counsel was necessary as the prosecuting attorney heard the motion when it was made in open court.

[3] Practice Book § 3-10 (a) provides: "No motion for withdrawal of appearance shall be granted unless good cause is shown and until the judicial authority is satisfied that reasonable notice has been given to the party or parties represented by the attorney and to other attorneys of record."

to state his reasons for asserting objections and was afraid to object because he might be held in contempt and placed in custody. In support of this claim, the defendant provides a lengthy excerpt of a colloquy between defense counsel and the court in which the defense counsel expresses his fear of being held in contempt and his belief that the trial court had improperly rendered him ineffective.

The defendant offers not a single example of a failure to object or a failure to do anything because of the claimed intimidation. We have said, in the context of a claim of ineffective assistance, that simply mouthing the words "ineffective assistance" of counsel is not sufficient to establish the claim. *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 584, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). We know of no authority that supports the defendant's assertion that a mere claim by counsel that he felt intimidated by the trial court is sufficient to warrant a new trial.

We have reviewed the transcript and conclude that the trial court properly admonished defense counsel about his improper and gratuitous comments during jury selection and during evidence. Defense counsel repeatedly disregarded those admonitions and the trial court acted within its discretion in warning him that, if he continued to conduct himself improperly, the trial court would hold him in contempt. Despite that warning, the trial court repeatedly told defense counsel that he had a right to object to questions and that the court was concerned only with his improper comments on the evidence.

Moreover, motions to withdraw as counsel that are made on the eve of or during trial are not favored. Although our cases typically address situations in which the motion to withdraw was precipitated by a *party's*

expressed dissatisfaction with counsel, we believe that the rationale of those cases also applies where counsel, without any client dissatisfaction, moves to withdraw during trial because of claimed ineffectiveness. "There can be no dispute that a criminal defendant has a constitutional right to the effective assistance of counsel; *McMann* v. *Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Levine* v. *Manson*, 195 Conn. 636, 639, 490 A.2d 82 (1985); that right, however, is not without limitation. For example, the right to counsel does not include the unbridled right to discharge counsel on the eve of trial . . . . *State* v. *Drakeford*, [202 Conn. 75, 83, 519 A.2d 1194 (1987)], quoting *United States* v. *Grow*, 394 F.2d 182, 209 (4th Cir.), cert. denied, 393 U.S. 840, 89 S. Ct. 118, 21 L. Ed. 2d 111 (1968). This limitation applies to both private counsel retained by an individual defendant as well as court-appointed counsel. See *State* v. *Gethers*, 193 Conn. 526, 543, 480 A.2d 435 (1984), and cases cited therein. Furthermore, it is clear that the right to effective assistance of counsel does not include an unlimited opportunity to obtain alternate counsel. *State* v. *Watson*, 198 Conn. 598, 610, 504 A.2d 497 (1986). Inherent in these limitations is a concern for unwarranted interruptions in the administration of justice. While courts must be assiduous in their defense of an accused's right to counsel, that right may not be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. *United States* v. *Calabro*, 467 F.2d 973, 986 (2d Cir. 1972), quoting *United States* v. *Bentvena*, 319 F.2d 916, 936 (2d Cir.), cert. denied sub nom. *Ormento* v. *United States*, 375 U.S. 940, 84 S. Ct. 345, 11 L. Ed. 2d 271 (1963) . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Morico*, supra, 14 Conn. App. 143–44.

Our Supreme Court has held that "to work a delay by a last minute discharge of counsel there must exist

exceptional circumstances." (Internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 726, 631 A.2d 288 (1993). "We must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial." *State* v. *Drakeford*, supra, 202 Conn. 82.

We find no exceptional circumstances or good cause here, where counsel simply declared himself intimidated and ineffective with no basis therefor. We are satisfied that the trial court did not abuse its discretion in denying the defendant's motion to withdraw.

## II

The defendant next claims that the actions of the trial court deprived her of a fair trial. We will discuss each action in turn.

### A

The defendant first claims that the trial court improperly threatened defense counsel with contempt before the jury and she is therefore entitled to a reversal of her convictions and a new trial. In *State* v. *Conroy*, 194 Conn. 623, 632–33, 484 A.2d 448 (1984), our Supreme Court addressed a situation in which defense counsel was threatened with contempt of court in the presence of the jury during closing argument. The Supreme Court noted that although the defendant did not object to the trial court's warning or request a curative instruction, it would nevertheless consider the claim "[b]ecause of the understandable reluctance of an attorney to object to a threat of contempt . . . ." Id., 633. For the same reason, we will consider the unpreserved claim here.

The trial court did, in fact, threaten to hold defense counsel in contempt in the presence of the jury.[4] In

---

[4] The court and counsel engaged in the following colloquy:

"The Court: That comment [by defense counsel] again you are to ignore.

*Conroy,* our Supreme Court stated: "While the better practice would have been for the trial court to have issued its warning in the absence of the jury or to have given a curative instruction . . . the trial court's action in the circumstances here was not erroneous." (Citation omitted.) Id. Here, the trial court did give a curative instruction as suggested in *Conroy,* telling the jurors that they must decide the case on the evidence and that his threat of sanctions against defense counsel should in no way affect their consideration of the evidence or of whether the state has established its burden of proof.[5]

We conclude that the curative instruction sufficiently eliminated any possible prejudice to the defendant that might have arisen because of the trial court's threat of contempt in the presence of the jury.

## B

As part of her claim that she was deprived of a fair trial by the trial court's conduct, the defendant claims

He will not refrain from doing what he does. I can hold him in contempt and I am going to do it very soon . . . . You are warned again. You will try the case in the basement. You cannot comment and testify. You know better.

"[Defense Counsel]: All I tried to do—

"The Court: I am not looking for a response. Don't comment again, or I am warning you before these people I will hold you in contempt the next time you comment from that chair or anywhere near it about the evidence in this case."

[5] The trial court's curative instruction was as follows: "Just one other comment I would make. There were times yesterday when the court threatened various sanctions against the defense counsel. My role in the case is to assure that the case moves along in an orderly fashion according to the rules. If that happens again, I want you to understand it has nothing to do with the evidence in this case. You still have to decide this case on the basis of testimony and exhibits. I just want you to understand there may be occasions when I have to do things in the course of the trial. I just want you to be sure that in no way should it affect your feeling about the evidence in the case or whether or not the state has established its burden of proof. That's an aside that is my responsibility to make sure that the case proceeds along in an orderly fashion. It should not in any way affect your viewing of the evidence. It is the evidence that you have to view and recall and factor into your decision in the case."

that the court's threats, made outside the presence of the jury, to hold defense counsel in contempt and the court's chastising and disparaging of defense counsel rendered counsel ineffective in representing her.

Again, in support of this claim, the defendant offers excerpts from the colloquies with the trial court in her brief. The defendant, however, fails to quote defense counsel's improper remarks that caused the court to threaten to hold counsel in contempt and to warn counsel to cease his improper comments on the evidence.[6]

We have reviewed the transcripts and we conclude that the trial court acted properly. The trial court was

---

[6] While there are numerous other instances of improper conduct of defense counsel, the following transcript excerpts are illustrative of such impropriety:

Examination by defense counsel during voir dire:

"[Defense Counsel]: Do you think you could be fair in this case? If not, I appreciate your candidness, and we will eliminate a lot of things.

"Panel member: To be honest, I am not sure because I don't particularly care for child abusers or child molesters.

"[Defense Counsel]: Thank you. I have nothing more, Your Honor. No wonder the government employer. Put that for the record.

"Panel member: Pardon me?

"[Defense Counsel]: Nothing.

"The Court: [Defense Counsel], I would prefer you not make any gratuitous comments."

Examination by the assistant state's attorney during voir dire:

"[Assistant State's Attorney]: I am not asking you if you believe in all of them. I am wondering if a police officer takes the stand, before you heard him say anything, is he at a disadvantage because of the experience you had?

"Panel member: Most would be, yes.

"The Court: All right. I am going to excuse you, sir, from the case.

"[Defense Counsel]: Finally we got someone to say something.

"The Court: [Defense Counsel], if you do that one more time, make gratuitous comments, I am going to hold you in contempt. I never threatened anyone, but I am tired of you commenting every time somebody speaks.

Examination of panel member by defense counsel during voir dire:

"[Defense Counsel]: You can excuse her, Your Honor."

"The Court: You are excused, ma'am."

"[Defense Counsel]: Thank God. I have no questions. I have no comments, Your Honor.

"The Court: You made all the comments already.

confronted by a trial attorney who, despite warnings, persisted in improperly commenting on the evidence and proceedings starting at jury selection and continu-

"[Defense Counsel]: I know, Your Honor. What can I say?

\* \* \*

"The Court: Well, I have to learn to control myself. [Defense counsel], you better, because you won't be here at the end of this case, I will guarantee it. That's on the record.

"[Defense Counsel]: I understand.

"The Court: As I put it on the record, there is only one person going to run this court. I keep saying it to you. You don't believe it. It is me. Just challenge me one time too often. No comments of a gratuitous nature. I don't need to hear it.

Cross-examination of Gail Avery-Closs by defense counsel:

"[Defense Counsel]: But as a result of this, what you are testifying, your bus company, right, was satisfied with her explanation?

"[Witness]: Yes.

"[Defense Counsel]: You say it reluctantly. You didn't see anything—

"[Assistant State's Attorney]: Objection, Your Honor. No reason to be argumentative with this witness.

"The Court: Sustained. Not a proper comment. Ask questions, [Defense Counsel]. Your comments are not necessary. I am going to tell the jury now and at the end of this case to ignore your comments."

Recross-examination of Gail Avery-Closs by defense counsel:

"[Defense Counsel]: Ma'am, who filed the complaint? Who filed the complaint?

"[Witness]: [The victim's] mother called us.

"[Defense Counsel]: Was the boy living with the mother or father?

"[Assistant State's Attorney]: Objection. Outside the scope of my redirect.

"The Court: Sustained, and she has also indicated she doesn't know several times.

"[Defense Counsel]: I think she said it before.

"The Court: That's why it is objectionable because it has been asked and answered.

"[Defense Counsel]: It is recross. So, I must say this.

"[Defense Counsel]: [The victim's] father, [the victim's] father, the boy lived with [the victim's] father, never called the Trumbull transportation system, never filed a complaint. Yes or no.

"[Witness]: Not that I am aware of.

"[Defense Counsel]: That's right. He never filed a complaint, and [the victim]—

"[Assistant State's Attorney]: Objection. Ask the comments be stricken.

"The Court: All comments are stricken. I will say it again because it is apparently not getting through to [Defense Counsel]. Other than for a question he asks, anything he says you are to ignore. I have to do it blanketwise because I cannot control him to comport himself in accordance with

ing through the trial. As previously discussed, the defendant points to nothing that counsel was prevented from asking or introducing into evidence because of the alleged intimidation by the court. Again, the court repeatedly made it clear that counsel had the right to object and to represent his client zealously as long as he did it within the parameters of the rules.

## C

The defendant's last claim is that the trial court improperly gave an instruction, sua sponte, during the direct examination of a defense witness. That instruction was to the effect that claimed drug use by the victim was a matter of impeachment of the victim's credibility.[7]

the rules, and I am tired of chastising him."

Direct examination of the witness by the assistant state's attorney:

"[Assistant State's Attorney]: Showing you what has been marked as state's exhibit 27 for identification, I would ask you to take a moment and read that short statement.

"[Defense Counsel]: Is he admitting it or what, Your Honor?

"The Court: He has not offered it, [Defense Counsel].

"[Defense Counsel]: I understand.

"The Court: He is asking him to look at it.

"[Defense Counsel]: I understand that he can look at it, but he has given the jury, unless he is going to accept it, the wrong impression.

"The Court: [Defense Counsel], please don't keep commenting over and over again."

[7] Defense counsel asked the witness: "[H]e told you he was on drugs and that [the defendant] didn't give them to him?" The court sustained the state's objection to this question and made the following statements to the jury: "That's not what he said. Let me explain one thing. The only purpose this is allowed at all is it is a question of credibility of [the victim]. You are not here deciding whether he is or is not a drug user. He testified that the only time he had drugs is drugs that he got [from the defendant]. The purpose of this is very limited purpose. Statements that someone made that are inconsistent with something that they have said on the stand are admissible, but only on the question of that witness,' meaning [the victim's], credibility. That's the sole purpose of allowing this, and I have allowed it only to a point, and this young man said he admitted to him that he used certain drugs at prior occasions. If you find that to be inconsistent with his prior testimony, it is a question for you to decide as to whether that is or is not inconsistent. Even if you find it inconsistent, that is just a factor that you can utilize in overall assessing the credibility of [the victim], and as I will

The defendant did not object to the instruction with respect to either its timing or its correctness. The defendant offers no analysis as to why this is an issue of constitutional magnitude and we do not conclude that it is. Therefore, this claim is not entitled to review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[8] Nor is the defendant entitled to plain error review. Plain error review " 'is reserved for those truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Austin*, 244 Conn. 226, 241, 710 A.2d 732 (1998). The circumstances here do not rise to the level of plain error.

The judgments are affirmed.

In this opinion the other judges concurred.

explain to you in my final instructions, the fact that you find something to be inconsistent doesn't mean that you feel that it had anything to do with the evidence he has presented here. It is strictly one of the many factors that you can utilize in determining a person's overall credibility, whether they have or have not made any prior inconsistent statements. That's why we don't go into any detail. We are not trying that issue."

[8] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.