STATE OF CONNECTICUT *v.* BENJAMIN JENKINS
(AC 22200)

Foti, Bishop and Shea, Js.

Argued April 1—officially released June 25, 2002

*Felix Esposito*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Benjamin Jenkins, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes §§ 53a-

54a (a)[1] and 53a-8,[2] and two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).[3] The trial court imposed a total effective sentence of ninety years incarceration. On appeal, the defendant claims that (1) the court improperly denied his requests to dismiss his attorney and (2) prosecutorial misconduct deprived him of a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early evening hours of December 21, 1998, several individuals were congregated on the sidewalk in front of a package store in New Haven. The defendant apparently had had a disagreement with someone who he believed was standing in that vicinity. The defendant, carrying a firearm and accompanied by another man, suddenly approached the group on foot. He raised his firearm and showered the group with gunfire.[4] As peo-

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-8 provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm . . . to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[4] Police investigators established that the shooter used an assault weapon in the attack. They recovered twenty-two spent nine millimeter cartridge casings, along with several bullets and bullet fragments, from the scene. Investigators also found bullets lodged in trees, cars and in nearby homes.

After the shooting, George Kimpson positively identified the defendant, with whom he was familiar prior to the shooting, as the shooter. Another eyewitness to the shooting, Henry Frazier, testified that he saw the defendant carrying a firearm and fleeing the shooting scene.

ple began to flee, bullets struck Lamont Coleman, George Kimpson and Marcus Warner. Coleman and Kimpson sustained serious physical injuries as a result of the shooting; Warner, whom the defendant shot in the head, subsequently died as a result of his injuries.

After the shooting, the defendant and his accomplice fled the immediate scene on foot. Police were dispatched to the shooting scene. As one officer in a vehicle responded within minutes, the defendant's vehicle sped by.[5] The officer activated his vehicle's overhead lights, but the operator of the defendant's vehicle did not stop. Despite the fact that the officer took note of the vehicle's license plate number, he did not engage in a protracted, high-speed pursuit of the vehicle and eventually lost sight of it. Additional facts will be set forth as necessary to resolve the issues on appeal.

I

The defendant first claims that the court, in violation of the sixth amendment to the United States constitution[6] and article first, § 8, of the constitution of Connecticut,[7] improperly denied his oral and written motions to dismiss his counsel. We disagree.

---

[5] In August, 1998, the defendant leased a maroon Lincoln Continental from a party in New York. To save on the cost of the vehicle's insurance, Amy Miller, an acquaintance of the defendant, obtained a Connecticut vehicle registration for the vehicle in her name. Miller did not use the vehicle.

[6] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

The sixth amendment to the United States constitution is applicable to the states through the due process clause of the fourteenth amendment. *Gideon* v. *Wainwright*, 372 U.S. 335, 342–44, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963) (applying sixth amendment right to counsel).

[7] The constitution of Connecticut, article first, § 8, provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the

The following additional facts are relevant to the defendant's claim. During the course of the trial, Thomas Conroy, an attorney and special public defender, represented the defendant. The record reflects that on January 19, 2000, during a hearing on a motion for bond reduction before Judge Fasano, the defendant interrupted the proceeding and personally addressed the court. The defendant stated: "I want to talk to you because it ain't coming out the way that I really want you to hear it." The defendant complained that Conroy was misstating his criminal record. He further informed the court that he wanted to clear his name and that "I'm not gettin' no help, you know what I mean, as far as legally, you know what I mean." The defendant did not make a motion to dismiss his counsel, and the court took no action as to those statements.

By way of a handwritten letter, dated January 30, 2000, addressed to the court, the defendant requested that the court appoint a special public defender to represent him. He also stated: "My present public defender is *not* providing the legal representation I need in this serious case I've been accused of. I need someone thoroughly equipped to help me in this matter." (Emphasis in original.) Judge Fasano treated the defendant's letter as a motion to dismiss counsel and conducted a hearing on the motion on March 1, 2000.

The court asked the defendant why he desired a different attorney to represent him. The defendant replied: "I don't know nothing about when the trial is approaching, but I've been wanting to fire the man since I first—the second time meeting him. I mean he's totally—he's not representing me. I don't even—it don't even seem like he even went to school to be a lawyer

accusation; to be confronted by the witnesses against him . . . and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. . . ."

cause he don't do nothing." The defendant made nonspecific allegations as to Conroy's preparation of his defense, what he perceived to be Conroy's lackluster performance, and a poor relationship between himself and Conroy. The defendant clearly indicated his desire not to be represented by Conroy. Conroy represented that he was working with an investigator and that his investigation would be complete by the time of trial. The defendant complained that the investigator lacked knowledge of the case and was not helping the defense.

In a memorandum of decision, Judge Fasano denied the defendant's motion to dismiss counsel. The court recognized the defendant's displeasure with Conroy, but noted that "[the defendant] has not provided the court with any legitimate basis or specific reason to grant his motion . . . other than general comments regarding his view of the representation to this point." The court noted Conroy's trial experience, his efforts to that point in the proceedings and concluded: "A change of counsel at this point would be a disservice to the defendant and is simply uncalled for under the circumstances here."

On May 12, 2000, the parties appeared before Judge Hartmere to conduct jury selection. Conroy informed the court that he had received a notice from the statewide grievance committee that the defendant had filed a complaint against him. Conroy indicated that despite the complaint, he did not know of a reason to discontinue his representation of the defendant. The court responded to that representation by informing the defendant that Conroy was a capable and experienced trial attorney. The court further informed the defendant that the case now was in the trial phase and that the court would not countenance any delay in the proceedings.

The defendant responded to the court's remarks by indicating that he was displeased that Conroy had

waived the defendant's right to a probable cause hearing. Despite the fact that on March 30, 1999, before Judge Fasano, the defendant waived his right to a probable cause hearing, he stated on May 12, 2000, that he did not want to do so. The court reminded the defendant that the decision to waive the hearing was a common and tactical legal decision made by Conroy on the defendant's behalf. The court explained that the defendant had agreed with that decision at the time that it was made and that the court would not revisit the issue. The defendant argued that he did not feel comfortable with Conroy's representation and that he had the right to be represented "the way I want to be represented." The court thereafter stated: "Mr. Conroy has been appointed a special public defender for you. You don't get to choose your attorney in terms of special public defenders. Mr. Conroy says there is no conflict. I will accept his representation . . . that he can represent you ably, and he is a very competent trial attorney, which I've said. So, we are going to continue."

On May 16, 2000, Conroy informed the court that the defendant again wanted personally to address it to convey his displeasure with the manner in which Conroy had been participating in the jury selection process. The defendant told the court that Conroy did not want his assistance and that he was not communicating with him. He also told the court that he had been trying to retain private counsel, but that it was costly to do so. The court told the defendant: "You're not in the process of getting a lawyer; you have a lawyer, and you're on trial." The court informed the defendant that Conroy had been asking legally appropriate questions during the voir dire process and that the court did not understand the defendant's complaint. The court stated: "I don't know what in the world you're talking about . . . ." The defendant stated: "I'm seeing it from a different angle. It's my life, and I feel I'm not getting the

representation that I need . . . ." The court reiterated that Conroy had been performing in a satisfactory manner during the jury selection process and that it would proceed with the trial.

The defendant now claims that Judge Fasano improperly denied his written motion to dismiss counsel and that Judge Hartmere improperly denied his oral requests to dismiss counsel. We begin our analysis of the defendant's claims by setting forth the general standards on which to review them.

"Our state and federal constitutions guarantee a criminal defendant the right to assistance of counsel. U.S. Const., amend. VI; Conn. Const., art. I, § 8." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). "The United States Supreme Court has definitively held that due process requires that the accused have the assistance of counsel for his defense. . . . *Argersinger* v. *Hamlin*, 407 U.S. 25, 28, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972). The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. . . . Id., 31." (Internal quotation marks omitted.) *State* v. *Cohens*, 62 Conn. App. 345, 353, 773 A.2d 363, cert. denied, 256 Conn. 918, 774 A.2d 139 (2001). "This state has had a long history of recognizing the significance of the right to counsel, even before that right attained federal constitutional importance." *State* v. *Stoddard*, 206 Conn. 157, 164, 537 A.2d 446 (1988).

"The standard when reviewing a denial of a request for alternate counsel . . . is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request. . . . Practice Book § 3-10 requires that a court find good cause to grant a motion to withdraw. Our Supreme Court has held that to work a delay by a last minute discharge of counsel there must exist exceptional circumstances.

. . . We must distinguish between a substantial and timely request for new counsel pursued in good faith, and one made for insufficient cause on the eve or in the middle of trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Marsala*, 59 Conn. App. 135, 144, 755 A.2d 965, cert. denied, 254 Conn. 948, 762 A.2d 905 (2000).

"While a criminal defendant's right to be represented by counsel implies a degree of freedom to be represented by counsel of [the] defendant's choice . . . this guarantee does not grant a defendant an unlimited opportunity to obtain alternate counsel on the eve of trial." (Internal quotation marks omitted.) *State* v. *Rosado*, 52 Conn. App. 408, 429, 726 A.2d 1177 (1999). Although the court has " 'a responsibility to inquire into and to evaluate carefully all substantial complaints concerning court-appointed counsel' "; *State* v. *Marsala*, supra, 59 Conn. App. 144; the extent of such inquiry lies within the court's sound exercise of discretion. After it has given the defendant an adequate opportunity to inform it of his or her complaints, the court has broad discretion in determining whether circumstances warrant the appointment of new counsel or the dismissal of the defendant's existing counsel. See *State* v. *Webb*, supra, 238 Conn. 423–24.

As a preliminary matter, we observe that the defendant's claim concerns rulings from two different trial courts at different phases of the proceeding. We shall examine each of the rulings separately to determine whether either court or both abused its discretion in denying the defendant's requests.

On the basis of our review of the record, we conclude that Judge Fasano did not abuse his discretion in denying the defendant's written request to dismiss Conroy. The written request itself is nonspecific and actually was countered by Conroy's representations on the

record at the hearing on the motion. No legitimate basis was proffered, and the court properly concluded that no factual basis existed to dismiss counsel. After affording the defendant a hearing at which to present specific claims of inadequate legal representation, the defendant failed to demonstrate that circumstances warranted the appointment of alternate counsel. We conclude, as did Judge Fasano, that the defendant set forth only general comments reflecting his dissatisfaction with Conroy.

The state argues, perhaps correctly, that we are unable to review Judge Hartmere's action because the defendant never actually requested that he dismiss Conroy. Nonetheless, given the substance of the defendant's lengthy colloquies with Judge Hartmere, and his responses thereto, we see no harm in reviewing the defendant's discussions with Judge Hartmere as a request to dismiss Conroy. Even when we view the defendant's complaints in that light, we conclude that Judge Hartmere did not abuse his discretion in denying the defendant's request and proceeding with the trial.

Judge Hartmere permitted the defendant to speak in support of his complaints and, as the record reflects, the defendant addressed the court at length with his concerns. Judge Hartmere made an adequate inquiry into the matter. The record reveals that the defendant's general complaints against Conroy did not rise to the level of "exceptional circumstances" that would have warranted a change of counsel at the jury selection phase of the trial. We have stated that "simply mouthing the words 'ineffective assistance' of counsel is not sufficient to establish [that counsel's representation is deficient]." *State* v. *Patavino*, 51 Conn. App. 604, 608, 724 A.2d 514, cert. denied, 249 Conn. 919, 733 A.2d 236 (1999). The defendant's representations that he perceived a breakdown in communications with Conroy, that he did not feel "comfortable" with Conroy or that

he did not "feel" that he was being properly represented did not create even the semblance of a factual record to support a finding of good cause or exceptional circumstances to warrant a change in counsel.[8]

We conclude that both rulings of the trial court reflected a proper exercise of discretion.

## II

The defendant next claims that prosecutorial misconduct deprived him of a fair trial. Specifically, he claims that the prosecutor improperly (1) vouched for the credibility of a witness, (2) suggested that a witness had reason to fear for his safety, (3) assailed the defendant's character during the cross-examination of one of the defendant's witnesses by suggesting that the witness was testifying because he feared the defendant and later, during closing argument, misstated that witness' testimony, (4) implied that the jury could acquit the defendant only if it found that a state's witness had committed perjury, (5) disparaged the defendant's theory of defense, (6) appealed to the passions of the jury when he urged it to do "justice" and by asking it to be "justice," (7) argued that it was the jury's "duty" to convict the defendant and (8) misstated the testimony of one of the state's key witnesses.

The defendant concedes that at trial, he did not object to any of the allegedly improper comments that he challenges on appeal. He seeks review of his claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40,

[8] The defendant concedes that his action in filing a grievance against Conroy was not, in itself, cause for Conroy, who represented that the action presented him with no reason to withdraw, to withdraw automatically. See *State* v. *Vega*, 259 Conn. 374, 388, 788 A.2d 1221 (2002) (filing of grievance in and of itself insufficient to establish per se violation of defendant's sixth amendment rights).

567 A.2d 823 (1989).[9] We will review all but one[10] of the defendant's claims because the record is adequate to do so, and an allegation of prosecutorial misconduct in violation of a fundamental right is of constitutional magnitude. *State* v. *Thompson*, 69 Conn. App. 299, 303, 797 A.2d 539 (2002). We conclude, however, that the challenged comments did not deprive the defendant of a fair trial and, therefore, that those claims fail under *Golding*'s third prong.

All but one of the defendant's claims involve comments made by the prosecutor during closing argument. "Prosecutorial misconduct can occur in the course of closing argument. . . . Our standard of review of a claim of prosecutorial misconduct that allegedly results in an unfair trial is well established. [T]o deprive a defendant of his constitutional right to a fair trial . . . the prosecutor's conduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is

[9] Pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

[10] We decline to review the defendant's claim of prosecutorial misconduct in part II C insofar as it concerns improper cross-examination because the record is not adequate to review that claim.

the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Moreover, [w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . .

"In determining whether the defendant was denied a fair trial we must view the prosecutor's comments in the context of the entire trial. . . . In examining the prosecutor's argument we must distinguish between those comments whose effects may be removed by appropriate instructions . . . and those which are flagrant and therefore deny the accused a fair trial. . . . The defendant bears the burden of proving that the prosecutor's statements were improper in that they were prejudicial and deprived him of a fair trial. . . . In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 266–67, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). With those principles in mind, we review the defendant's various claims of prosecutorial impropriety.

A

The defendant first claims that the prosecutor, on four separate occasions during the course of his rebuttal

closing argument, commented on the credibility of Henry Frazier, an eyewitness to the shooting.

The prosecutor made the following statements: "[Defense counsel] wants you to believe that Mr. Frazier got on the [witness] stand and lied to you because that's the only circumstance under which that isn't what happened. He lied. And you saw that man, you know about his background, you know what he has done, you watched him testify, and there is nobody on this jury, I submit, that thinks that that man lied to you. . . . *I don't believe for a minute that he came in here, sat on that stand and lied.* . . .

"And, you know, he did describe the person. . . . The only discrepancy lies maybe in the hundred sixty-five pounds, not a hundred fifty-five. . . . Well, what does he weigh? What do I weigh? Because if all twelve of the jurors deliberating maybe took a guess at his weight, it is not easy, particularly wearing clothes. And, of course . . . we don't know what he weighed at the time of the crime. *But it sounds to me like a pretty decent description of somebody. Not a bad description.* The weight may or may not have been off. I can't tell you because I don't happen to be particularly good at weight. *I know other than that what you know is that Mr. Frazier is a very cautious, careful man, and I think you will conclude a very honest man who was not going to come in here and make a mistake. If he hadn't recognized the man in the courtroom, I believe he would have told you:* I don't know whether that is the man or not." (Emphasis added.)

It is improper for a prosecutor to express his or her own opinion, either directly or indirectly, as to the credibility of witnesses. *State* v. *Hammond,* 221 Conn. 264, 289, 604 A.2d 793 (1992); *State* v. *Williams,* 204 Conn. 523, 541, 529 A.2d 653 (1987). The prosecutor's comment, "I don't believe for a minute that he came in

here, sat on that stand and lied," was improper. The prosecutor not only vouched for the witness' credibility, but he expressed his personal view of the witness' credibility. That impropriety by the prosecutor was not, however, pervasive. Additionally, the context of the statement must be considered in assessing whether the statement deprived the defendant of a fair trial.

Although the prosecutor's statement facially was improper, we note that the prosecutor prefaced his closing argument by reminding the jury that it was the finder of fact and that his opinion of the facts was not evidence. Specifically, the prosecutor told the jurors that he wanted them to preface each of his remarks, in their minds, with the phrases "I suggest to you" or "this is what the evidence shows."[11]

Further, the court's instructions clearly and accurately set forth the jury's function as fact finder. After viewing the challenged remarks in their context and considering the fact that they occurred only during rebuttal argument, we are persuaded that any potential harm occasioned by them was assuaged by the court's instructions to the jury to determine for itself the credibility of the witnesses and not to consider as facts any

[11] The prosecutor argued: "Your job here as jurors in the next day or so is to do justice for Marcus Warner and for the other two victims of this senseless violence. And during the course of my argument, I am going to have to talk about the facts, but you know that your job is to find the facts, not mine. So, if I say anything that disagrees with what you collectively believe are the facts of this case, obviously, you are going to listen to what you guys feel the facts are. But I really can't argue unless I say 'I suggest to you' that this is what the evidence shows. And I want you to take that little phrase that I just used and include it in front of everything that I say, because, my opinions, they aren't evidence, and it's not appropriate for me to tell you this is what happened because that's your job. So, each time I say something happened, I want you to put that phrase in front of it, save us a little time and say, 'I suggest to you' that you are going to determine that the evidence shows you that this happens, all right. So, fit that in because I am not going to try to tell you how to do your job. I am trying to give you some ideas about how to approach this case."

arguments or statements made by the attorneys. See *State* v. *Dudley*, 68 Conn. App. 405, 415–16, 791 A.2d 661, cert. denied, 260 Conn. 916, 797 A.2d 515 (2002).

B

The defendant next claims that "[t]he prosecutor reprehensively assailed the defendant's character by inappropriately suggesting that Frazier had reason to fear for his safety."

During his rebuttal argument, the prosecutor argued: "And, anyhow, then you have Mr. Frazier, and, fortunately, you get to decide who is a good witness and who isn't, because I'd like you to imagine for a minute a better witness than a citizen who last lived on that block for a long time, who cares about his neighbors on that block, who has worked on the same job twenty-two years. He's fifty-six years old. He comes in here and he has the courage, knowing exactly what happened on that corner, to come in here and say I know who I saw and it's that man over there." The defendant argues that the prosecutor appealed to the passions and emotions of the jury, and that he suggested facts that were not in evidence, namely, that Frazier had reason to fear for his safety by testifying.

The prosecutor has a duty to confine his or her arguments to the evidence presented at trial and should avoid inviting jurors to decide the case before them based on their emotions. See *State* v. *Williams*, supra, 204 Conn. 537–38.

We do not view the prosecutor's comment as suggesting that the defendant had given Frazier any specific reason to fear for his safety. The prosecutor's characterization of Frazier as having the courage to testify in a murder trial, although superfluous, was not likely to have been viewed by the jury as anything more than an obvious attempt to bolster the weight of Frazier's

testimony. Frazier had testified in a murder trial; whether the prosecutor believed that such action was courageous likely carried little or no weight in the jury's deliberations. The remark was isolated and did not, in any way, hint at criminal activity outside of the record. In fact, the prosecutor did not even state that Frazier actually feared the defendant.

Furthermore, the challenged remark came in direct response to the personal observation of the defendant's counsel during his closing argument that "Frazier isn't a very good witness." Viewed in its context, as a rebuttal to the defendant's critique of Frazier's testimony, we cannot conclude that the jury likely took from the prosecutor's remark any insinuation that the defendant had threatened Frazier or had, in any other manner, intimidated him.

C

The defendant next claims that the prosecutor improperly (1) suggested that a defense witness testified out of fear that the defendant would harm his sisters and (2) misstated the witness' testimony in that regard during closing argument.

The record discloses the following facts. The state called Kimpson to the witness stand during its case-in-chief. Kimpson testified as to how he sustained a gunshot wound during the incident. He also identified the defendant as the shooter. The defendant called Jake Walker to testify during the defense case-in-chief. The defendant's counsel showed Walker a photograph of Kimpson. Walker testified that he recognized the man in the photograph as George Melville. Walker also testified that his mother's family name was Kimpson and that, to his knowledge, only his two sisters used the name Kimpson. Walker further stated that the man in the photograph was not related to him in any way. The defendant's counsel commented on Walker's testimony

during closing argument. In essence, he argued that the jury should disbelieve Kimpson's testimony because he had lied about his real name.

When the prosecutor cross-examined Walker, he asked him, essentially, why he was testifying. He asked Walker several times whether he had testified out of a concern for his sisters. He specifically inquired: "You know that man is not related to you, but the reason you want to make sure who is out here in public is that you want to be sure that nobody thinks that what he said or did in court . . . comes back to your sisters, right?" Walker testified: "I have no reason to be worried because I don't know anything that's going on. The only thing I know, that man is not related to me." Despite the prosecutor's further questioning into the reasons behind Walker's testimony, Walker testified: "We are not related, so there is no reason for anything."

During his closing argument, the prosecutor commented on Walker's testimony. He argued: "George Kimpson isn't a Kimpson. Well, folks, who told you that? Some guy who hides his motivation until forced to admit that he had already admitted it once. And I submit to you that the only witness you saw in this case was Jake Walker, who said, well, oh, I know I just denied that, but, yeah, in fact, that is my motive. The only witness in this whole case who says, oh, yes, what I told you a few minutes ago isn't the truth, because he denied, at least twice when I asked him, that his sisters were being connected to the person who identified the murderer until I reminded him that he had spoken to the inspectors that morning, then he said, oh, yeah, I said that. That's the sign of a witness who is not telling the truth, and you know what his motivation is."

Insofar as the defendant argues that the prosecutor's cross-examination itself was improper, the claim has

no merit. The defendant argues that the questioning was improper because he does not believe that the prosecutor possessed a good faith basis upon which to so inquire. We note, however, that the defendant failed to make a timely objection to the prosecutor's questions when they were asked. If he had done so, the court could have asked the prosecutor to set forth the basis for that line of questioning. If it found that a good faith basis did not exist, the court could have issued an immediate curative instruction to the jury to disregard the line of questioning. The other necessary consequence of the defendant's failure to object at trial is that we are unable to determine whether the prosecutor possessed a good faith basis for the inquiry; the record is inadequate. In its brief, the state argues that such a good faith basis existed because just prior to taking the witness stand, Walker had expressed to an inspector fear for his sisters' safety. Accordingly, the record is not adequate to review that aspect of the defendant's unpreserved claim. We also find no merit to the defendant's argument that the prosecutor's inquiry was inappropriate on its face simply because he asked Walker several times to admit the reasons behind his testimony and was, on several occasions, met with negative responses. Having reviewed the questioning, we do not conclude that the prosecutor overstepped the bounds of legitimate cross-examination.

The second aspect of the defendant's claim is that during closing argument, the prosecutor misstated Walker's testimony. Specifically, the defendant argues that the prosecutor "misstated the outcome of his [cross-examination], actually suggesting that Walker had, in fact, admitted that he was testifying out of fear." The defendant posits that the prosecutor, unable to elicit from Walker that he did fear for the safety of his sisters, fabricated the fact that Walker somehow had

changed his testimony and actually had admitted that the foregoing was his reason for testifying.

"[I]n fulfilling his duties, the prosecutor must confine the arguments to the evidence in the record." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 263, 780 A.2d 53 (2001). The prosecutor's recitation of Walker's testimony was clearly mistaken. The record does not reflect that Walker admitted having told inspectors that he feared for his sisters' safety. We conclude, however, that this misstatement did not deprive the defendant of a fair trial. The issue of Walker's credibility was of little relevance to the jury's assessment of the defendant's actions on December 21, 1998. Kimpson's identity was not an issue in the case, and Walker's testimony, although marginally relevant in the jury's assessment of Kimpson, did not directly relate to a central issue in the case. Furthermore, the misstatement's seriousness is lessened by the overall strength of the state's case. The defendant did not object to the argument at trial and did not afford the court an opportunity to issue a curative instruction. Nevertheless, we also recognize that in its charge to the jury, the court reminded the jury that its recollection of the evidence and testimony, rather than the arguments of trial counsel, was controlling. We presume that the jury followed the court's charge. See *State* v. *Dudley*, supra, 68 Conn. App. 412.

D

The defendant next claims that the prosecutor improperly argued that to acquit the defendant, the jury necessarily had to conclude that Frazier had committed perjury at trial.

During his closing argument, the defendant's counsel devoted a fair amount of time attempting to discredit Frazier's account of the shooting and his subsequent identification of the defendant. The defendant's counsel

opined that Frazier was "not a very good witness." He argued that Frazier was not able to identify the people that he saw immediately after the shooting, but that he nonetheless identified the defendant months after the shooting. He also stated that it was reasonable to conclude that Frazier had identified the defendant from a photographic array because the defendant's photograph was different from the other photographs in the array.

During his rebuttal argument, the prosecutor argued: "[The defendant's counsel] wants you to believe that Mr. Frazier got on the [witness] stand and lied to you because that's the only circumstance under which that isn't what happened. He lied. And you saw that man, you know about his background, you know what he has done, you watched him testify, and there is nobody on this jury, I submit, that thinks that that man lied to you."

The defendant correctly points out that this court has admonished prosecutors "to avoid statements to the effect that, if the defendant is innocent, government agents must be lying." *State* v. *Williams*, 41 Conn. App. 180, 184, 674 A.2d 1372, cert. denied, 237 Conn. 925, 677 A.2d 950 (1996). The defendant's claim, however, falls far short of demonstrating that the prosecutor expressly or implicitly argued that the defendant was innocent *only* if Frazier had lied. In other words, the prosecutor's argument did not create such an impermissible set of choices for the jury. For example, the prosecutor did not suggest that the jury was prevented from acquitting the defendant if it found that Frazier was simply mistaken as to his pretrial or in-court identifications. Accordingly, the defendant has again failed to demonstrate that a constitutional violation clearly exists.

E

The defendant next claims that the prosecutor improperly disparaged the defendant's theory of defense.

In support of his claim, the defendant refers to two separate comments made by the prosecutor during rebuttal argument. The prosecutor made the first comment in response to an attempt by the defendant's counsel to discredit Kimpson's testimony on the basis of the fact that Kimpson may not have been using his real name. During closing argument, defense counsel stated that "if you are lying about something, maybe you are lying about everything. You can say, from the fair inference that you don't even know if the name is Melville or Kimpson, is the [identification] Kimpson made reliable?"

The prosecutor responded: "And even if you don't [know the motive behind Walker's testimony]—even if we assume, which I think you can't, based on this evidence, that George Kimpson isn't George Kimpson, so what? So what? Tell me why that is important to this case. What does that have to do with him identifying Benjamin Jenkins—what his name is? He could be Oliver Montgomery, and if he's the guy who shot this man out on the street, who cares? Who cares? It's a part of diverting you from the facts because the facts require you to convict his client. And, of course, there is no suggestion as to why he would claim to be a Kimpson if he wasn't one. I mean, the Kimpsons, there is no evidence like, the Kimpsons are millionaires or something. It's totally irrelevant. But if we take you to the irrelevant, you forget how everything fits together, and I don't think that you are that dumb."

The second of the prosecutor's challenged remarks was in response to the argument of the defendant's counsel concerning the type of weapon used in the shooting and whether or not the person who fired it possessed the requisite intent to be convicted of the crimes of assault in the first degree and murder. The defendant's counsel asked the jurors to recall the testimony of the firearms expert who had testified that the

firearm used in the shooting was difficult to aim. The defendant's counsel also argued: "Remember [what] the forensic evidence here is, the person who died, Marcus Warner, he was only—there was only one bullet. There weren't five or six bullets all laid in him or all striking one individual. It was one bullet that hit him. And there was a spray. What does that mean? It says something about intent, I think, if the gun is—maybe what the person's intent was, firing in one direction and he doesn't know what the direction is and it's an unlucky shot that hit Marcus Warner.

"And if there is no intent to kill, if there is just an intent to cause mayhem or fire the gun, not specifically aimed to kill someone, then he's not guilty; then you can't enter a verdict of guilty on the charge of murder because it's a specific intent crime. I think the firearms expert's testimony was significant because he testified about how difficult it is to—for the bullets to go exactly where you're trying to aim because there is a kick, there is a tendency of the hand to move."

The prosecutor, during his rebuttal argument, responded to that line of argument as follows: "I don't know whether I even have to address the jerking gun idea, but what I told you in the first instance is what makes sense to an intelligent, thinking human being. Somebody doesn't go there with a gun full of at least twenty-two bullets, empty it on a group of five or six people and hit three of them, and he didn't mean to do it. What he's telling you is, hey, I didn't do this, but if I did, I didn't mean it. Particularly when they are running up Irving Street and when they are doing that, they are trying to load up another clip. They come there with twenty-two shots and another clip."

The defendant argues that the prosecutor belittled his theory of defense by improperly suggesting that the defense would appeal only to unintelligent jurors. We

are mindful that courts should afford counsel generous latitude in the heat of argument and that the limits of legitimate argument are not delineated precisely by rule and line. *State* v. *Whipper*, supra, 258 Conn. 252. We conclude that when read in context, the challenged remarks fell within the bounds of proper commentary on the defendant's theory of defense. See *State* v. *Perry*, 58 Conn. App. 65, 71–72, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000). Accordingly, the defendant has failed to demonstrate that the comments were improper or that they deprived him of a fair trial.

F

The defendant next claims that the prosecutor improperly appealed to the emotions and passions of the jury when he argued that its job was to do "justice" for the victims of the shooting and that the jury itself represented "justice."

As he began his closing argument, the prosecutor stated: "Your job here as jurors in the next day or so is to do justice for Marcus Warner and for the other two victims of the senseless violence." During his rebuttal argument, he stated: "Where is justice in our society? Maybe when you heard that the police arrested this defendant you thought they were responsible for justice, and maybe when you heard that the information filed against him, which is in evidence, had my name on it, you thought maybe the prosecutor is responsible for justice, and as you watched Judge Hartmere presiding over this case, even managing the evidence, you thought that maybe the judge is responsible for justice, but none of that is entirely true. In the United States of America you, the jury, the citizens, are justice, and in this trial you are justice, and the decision you make will be the only opportunity to bring justice in this case to Marcus Warner and the other victims, at least on this earth, and it's your sworn duty to look only to the

totality of the evidence to do so without agendas or outside distractions, and I submit to you, you're to bring back a firm and resounding verdict of guilty on all three of these charges."

"An appeal to emotions, passions, or prejudices improperly diverts the jury's attention away from the facts and makes it more difficult for it to decide the case on the evidence in the record." *State* v. *Alexander*, 254 Conn. 290, 307, 755 A.2d 868 (2000).

We do not view the challenged remarks as being improper. Having reviewed the prosecutor's entire argument, we do not conclude that it invited the jury to abdicate its role of deciding the case based on the evidence adduced at trial. Likewise, we do not view his rhetoric as an invitation for the jurors to decide the case based on abstract notions of justice. Contrary to the defendant's argument, *State* v. *Mills*, 57 Conn. App. 202, 207, 748 A.2d 318, cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000), is distinguishable. The context of the challenged comment concerning "justice" in *Mills* cast its use in a far different light. In *Mills*, we concluded that "[t]he prosecutor's repeated appeals to the jury that justice required a conviction coupled with the repeated vitriolic references to the defendant could reasonably have been a factor in the jury's decision to convict. His opinion that society would be in trouble if the defendant were not convicted might also have played a part in the jury's decision to convict because of a fear that the defendant might strike again if acquitted." Id., 208–209.[12] The comments in the present case did not infringe on the defendant's right to a fair trial.

[12] The prosecutor in *Mills* also argued: "It's murder, murder based on an unprovoked attack of a man sitting at a table, minding his business. If we allow this to happen, we are all in trouble. If—we could be in somebody's house and somebody—minding our business, somebody can come in and stab . . . ." (Internal quotation marks omitted.) *State* v. *Mills*, supra, 57 Conn. App. 207 n.8.

## G

The defendant also claims that the prosecutor improperly argued that it was the jury's "duty" to convict the defendant.

The record reflects that the prosecutor carefully summarized the evidence against the defendant, including the eyewitness and other testimony that the state presented at trial. After he did so, he argued: "You know that he's guilty beyond a reasonable doubt, and your duty—which is, guilty in a homicide case, in a murder case."

Our review of the final summation leads us to conclude that when read in context, the prosecutor's use of the term "duty" was not improper. The prosecutor's remarks made it clear that the "duty" to convict arose only if the jury had concluded that the evidence, as presented by the state, proved beyond a reasonable doubt the defendant's guilt. That was not improper.

## H

The defendant's last claim of prosecutorial misconduct is that the prosecutor misstated Frazier's testimony.

Frazier testified that after the shooting, he observed the defendant and another man running along Irving Street. He stated that one was carrying a weapon and that the other was "doing something with his coat." During his rebuttal argument, the prosecutor argued that the defendant possessed the intent required for the commission of the crimes. He stated: "Particularly when they are running up Irving Street and when they are doing that, they are trying to load up another clip. They came there with twenty-two shots and another clip to load." The defendant argues that the prosecutor's reference to loading another clip did not reflect the testi-

mony adduced at trial and therefore was improper.

We first observe that the prosecutor's argument likely reflected a reasonable inference to be drawn from the evidence adduced at trial. Frazier saw the defendant carrying a firearm and leaving the shooting scene. According to Frazier, the man running next to the defendant was "doing something with his coat." Nonetheless, even if that inference was not reasonable, we do not view the misstatement as so severe as to conclude that it deprived the defendant of a fair trial.

After considering the strength of the evidence presented at trial, we conclude that it is highly unlikely that this remark had any effect on the jury's deliberations. Not every misstatement of evidence made during the heat of argument deprives the defendant of a fair trial. The prosecutor's remark was isolated and essentially concerned the defendant's conduct after he had allegedly committed the crimes with which he stood charged. Whether the defendant or his accomplice were attempting to reload a firearm was not as relevant to the issues before the jury as were the facts that the defendant was fleeing a shooting scene while carrying a firearm. Likewise, we note once again that the court properly instructed the jury that its recollection of the evidence controlled, not the representations about the evidence embedded in the arguments of counsel.

I

Having reviewed every claim of prosecutorial misconduct, we reiterate that to prove that prosecutorial misconduct deprived him of a fair trial, the defendant must demonstrate substantial prejudice. *State* v. *Richardson*, 214 Conn. 752, 760, 574 A.2d 182 (1990); *State* v. *Northrop*, 213 Conn. 405, 421, 568 A.2d 439 (1990). To demonstrate that, the defendant must establish that the trial as a whole was fundamentally unfair and that the

misconduct so infected the trial with unfairness as to make the conviction a denial of due process. *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). "The ultimate question is [even if the conduct complained of is found to have been improper], whether the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Singh*, 259 Conn. 693, 723, 793 A.2d 226 (2002).

Even where we have noted that the prosecutor's comments were improper, we conclude that when the comments are considered either individually or collectively, they did not "so [infect] the trial with unfairness as to make the conviction a denial of due process." *State* v. *Alexander*, supra, 254 Conn. 303. All of the challenged remarks were made during closing argument; they were not a pervasive quality of the trial. The defendant did not object to any of the comments at trial, leaving us to assume that he did not view them at that time as so prejudicial that they jeopardized his right to a fair trial. See *State* v. *Denson*, 67 Conn. App. 803, 815, 789 A.2d 1075, cert. denied, 260 Conn. 915, 797 A.2d 514 (2002). Contrary to the defendant's point of view, we do not view any of the challenged remarks as particularly egregious when viewed in their proper context, and the remarks did not relate to central issues before the jury. We note the strength of the state's case and further note that to the extent that the prosecutor misstated the evidence or injected his opinions as to the evidence, the court properly instructed the jury that its recollection of the evidence controlled.

Accordingly, we conclude that the defendant cannot prevail on his unpreserved claims of prosecutorial misconduct because, even where such misconduct existed, he has failed to show that it deprived him of a fair trial. He has not demonstrated that a constitutional violation

clearly exists, and thus his claim fails under *Golding*'s third prong. See footnote 9.

The judgment is affirmed.

In this opinion the other judges concurred.