**Bert HUNTER, Plaintiff–Appellant,**

v.

**Paul K. DELO, Superintendent, Potosi Correctional Center, Defendant–Appellee.**

**No. 95–1467.**

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 14, 1995.

Sean Dennis O'Brien, Kansas City, MO, argued, for appellant.

Stacy Louise Anderson, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before McMILLIAN, LOKEN, and HANSEN, Circuit Judges.

LOKEN, Circuit Judge.

This appeal results from efforts by Bert Hunter, a Missouri inmate under sentence of death, to delay consideration of his habeas petition through claims of conflict with his appointed counsel. After Hunter refused to cooperate for many months, the district court [1] denied his motion for substitute counsel and dismissed the petition with prejudice. Hunter appeals. Though we affirm the district court's orders denying Hunter substitute counsel, we conclude with some reluctance, given Hunter's behavior, that the court erred in failing to give him one more opportunity to address the merits of this, his initial federal habeas petition. We therefore reverse and remand.

## I. Procedural Background.

In October 1993, a pro se habeas petition was filed in the district court, bearing the signature "Bert Hunter." Judge Whipple appointed attorney Mary–Louise Moran to represent Hunter. In May 1994, Hunter filed a pro se motion to dismiss the petition because it was filed without his knowledge or authorization. Moran moved to dismiss that motion, expressing her opinion "that it is [not] in the best interest of Petitioner to seek the dismissal of this cause." Hunter then moved to discharge Moran as disloyal and has since refused to communicate or cooperate with her in any way.

The district court initially denied Hunter's motion to dismiss, but after we granted a writ of prohibition, *In re Bert Hunter,* No. 94–8080 (8th Cir. Aug. 2, 1994), it dismissed the petition without prejudice. The State then scheduled Hunter's execution for August 26, 1994. On August 22, Hunter filed a second habeas petition in the Eastern District of Missouri and moved to stay the execution. The case was transferred to the Western District of Missouri [2] and assigned to Judge Whipple, who promptly held a telephonic hearing on the motion for stay. Hunter refused to tell the court whether he had signed or authorized this new petition. Based on his prior experience with this petitioner, Judge Whipple denied a stay of execution for lack of evidence that a genuine habeas petition had been filed. Hunter then petitioned this court for a stay of execution, a writ of mandamus, and an order recusing Judge Whipple, presenting for the first time satisfactory evidence he had in fact authorized the second habeas petition. We granted a limited stay of execution, denied other relief, and remanded.

On remand, the district court extended the stay of execution and granted Hunter's motion for appointment of counsel, again appointing Moran as Hunter's counsel. In early October, Hunter moved to have new counsel appointed. After a hearing, the district court denied the motion because Hunter refused to explain why he was dissatisfied with Moran—indeed, he refused to respond to any questions from the court. The court also (i) appointed Cheryl Rafert, an attorney with the Missouri Capital Punishment Resource Center, to serve as Hunter's co-counsel; (ii) gave Moran until December 7, 1994, to determine whether all claims had been asserted in Hunter's pro se petition and to file any amended petition that might be appropriate; and (iii) gave co-counsel Rafert an additional thirty days to supplement Moran's amended petition.

On December 2, Moran requested more time to file an amended petition, explaining

1. The HONORABLE DEAN WHIPPLE, United States District Judge for the Western District of Missouri.

2. Hunter was convicted of first degree murder in a state court located in the Western District of Missouri. *See State v. Hunter,* 840 S.W.2d 850, 855 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993).

that neither Hunter nor Rafert, at Hunter's direction, would discuss the case with her. In response, Rafert and Sean O'Brien of the Missouri Capital Punishment Resource Center renewed Hunter's motion to discharge Moran and appoint new counsel. On December 22, the district court denied the motion to remove Moran and removed Rafert as co-counsel because Hunter, "by and through Ms. Rafert, has made repeated attempts to stall, obstruct, and/or prevent this Court from addressing the merits of his case." The court gave Moran additional time to file an amended petition and warned Hunter that if he persisted in refusing to cooperate with appointed counsel, it would dismiss his petition with prejudice.

On January 17, 1995, Moran moved to withdraw because Hunter refused to communicate with her. The court ordered Hunter to show cause why his petition should not be dismissed. At a February 9 hearing, Hunter again would not explain his dissatisfaction with Moran nor otherwise communicate directly with the district court. Judge Whipple then granted Moran's motion to withdraw and dismissed the petition with prejudice. This appeal followed.

## II. Substitution of Counsel.

■ Hunter first argues that the district court erred in denying his motions to discharge Moran and appoint new counsel. Hunter has no Sixth Amendment right to counsel in this federal habeas corpus proceeding. *See Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). But a federal statute, 21 U.S.C. § 848(q)(4)(B), "grants indigent capital defendants a mandatory right to qualified legal counsel and related services '[i]n any [federal] post conviction proceeding.'" *McFarland v. Scott,* — U.S. —, —, 114 S.Ct. 2568, 2571, 129 L.Ed.2d 666 (1994) (footnote omitted). Given this congressional mandate, we believe that substitution-of-counsel standards applied in cases in which the Sixth Amendment is implicated should apply here as well. *Cf. Murray v. Delo,* 34 F.3d 1367, 1373 (8th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 2567, 132 L.Ed.2d 819 (1995).

■ Requests by criminal defendants for new counsel raise difficult issues requiring courts to weigh conflicting factors—the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job. Because of these tensions, the standards for granting substitute counsel are strict:

> [S]ubstitution of counsel is a matter committed to the sound discretion of the district court. To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel [such as] a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. The defendant's right to counsel, however, does not involve the right to a "meaningful relationship" between an accused and his counsel.

*United States v. Swinney,* 970 F.2d 494, 499 (8th Cir.1992) (citations omitted), *cert. denied,* — U.S. —, 113 S.Ct. 1650, 123 L.Ed.2d 271 (1993).

■ Hunter primarily argues that he was entitled to substitute counsel because of an irreconcilable personal conflict and complete breakdown of communication with Moran. Of course, the record is clear that Hunter would not communicate with Moran. Because of the potential for abuse, however, that cannot be the end of the inquiry. *See McKee v. Harris,* 649 F.2d 927, 932 (2d Cir. 1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). A district court "confronted by such an allegation [of irreconcilable conflict] has an obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction." *United States v. Hart,* 557 F.2d 162, 163 (8th Cir.), *cert. denied,* 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977).

Consistent with this obligation, the district court held a hearing on Hunter's initial motion for substitute counsel and appointed Rafert to represent Hunter at this hearing. When Hunter refused to tell the court why he was dissatisfied with Moran's representation, the court stated: "I've got insufficient

evidence to act on your motion to disqualify Mary–Louise Moran.... because you are the only one who can supply that evidence, and you can only supply that evidence by testifying, by speaking here in Court." When Hunter held fast to his refusal to testify in support of his motion, the court denied the motion.

Hunter argues that the district court failed to conduct an adequate inquiry because, when Hunter refused to speak at the hearing, the court would not permit Rafert to call Moran as a witness to testify to the breakdown in communication, or to call three other inmates to testify that Hunter was indeed upset with Moran as his counsel.[3] But the key issue was not the fact of the breakdown, it was the reason for Hunter's dissatisfaction, an issue that only Hunter himself could credibly resolve. Hunter was not entitled to new counsel if his refusal to cooperate with Moran was simply a " 'stonewalling' effort to select counsel of his own choice." *United States v. Horton*, 845 F.2d 1414, 1418 (7th Cir.1988). Thus, the district court did not abuse its discretion in denying the motion because of Hunter's silence. In these circumstances, Hunter's "intractable silence amounted to a waiver of any change in counsel to which he may otherwise have been entitled." *Thomas v. Wainwright*, 767 F.2d 738, 743 (11th Cir.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986).

Hunter also argues that he was entitled to new counsel because a conflict of interest developed when Moran opposed his motion to dismiss the first petition. "[A] conflict exists when an attorney is placed in a situation conducive to divided loyalties." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991). Here, Hunter presented no credible evidence of divided loyalty. Moran's opposition to Hunter's motion to dismiss was based upon her professional opinion that the motion was not in his best interest. Moran had good reason to fear that, "should [Hunter's] *pro se* petition be summarily dismissed, any petition subsequently filed by counsel could be subject to dismissal as an abuse of the writ." *McFarland*, —— U.S. at ——, 114 S.Ct. at 2572. Thus, even if Hunter wanted to dismiss so he could seek a different venue, Moran's opposition to that ploy was consistent with her obligation to provide Hunter with vigorous legal representation. "A defendant is entitled to appointment of an attorney with whom he can communicate reasonably, but has no right to an attorney who will docilely do as [she] is told." *United States v. Moore*, 706 F.2d 538, 540 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).[4]

We conclude the district court did not abuse its discretion in denying Hunter's motion for substitute counsel. The court exhibited concern for Hunter's right to counsel and patience with a contumacious litigant. It investigated Hunter's assertions, gave him every opportunity to justify his dissatisfaction, and concluded that there was no good cause for the appointment of new counsel.

### III. Dismissal.

Hunter next argues that the district court abused its discretion by dismissing his petition with prejudice. Dismissal is a "drastic sanction that should be exercised sparingly," but it is "within the 'permissible range of [the court's] discretion' if there has been 'a clear record of delay or contumacious conduct by the plaintiff.' " *Brown v. Frey*, 806 F.2d 801, 803 (8th Cir.1986) (citations omitted). Dismissal has become a more drastic sanction in federal habeas cases because, with limited exceptions, dismissal of an initial petition now bars a subsequent petition as an abuse of the writ. *See McCleskey v. Zant*,

---

**3.** Rafert's offer of proof on these matters included testimony that the other inmates were unhappy with Moran's services as their attorney in unrelated cases. This evidence was irrelevant. Rafert's insistence that the district court consider irrelevant accusations against Moran reflected an unseemly desire to embroil the court in a dilatory sideshow. We affirm the order removing Rafert as co-counsel.

**4.** Like the district court, we ignore Hunter's attempt to create a conflict of interest by filing a lawsuit against Moran that was quickly dismissed as frivolous. *See Smith v. Lockhart*, 923 F.2d at 1321 n. 11.

499 U.S. 467, 493, 111 S.Ct. 1454, 1469–70, 113 L.Ed.2d 517 (1991).

■ The district court gave Hunter fair warning that it would dismiss his petition if he continued his stalling tactics and refused to cooperate with the court and appointed counsel. We recognize the "needs of the court in advancing a crowded docket and preserving respect for the integrity of its internal procedures." *Brown,* 806 F.2d at 804. And we share the court's frustration with Hunter's conduct, which was contrary to what is properly expected of a litigant seeking judicial relief.

Nevertheless, we must also consider whether dismissal serves the ends of justice. *See Guyer v. Beard,* 907 F.2d 1424, 1429 (3d Cir.1990). Hunter is under a sentence of death, and this is his first federal habeas petition. Death penalty jurisprudence is complex and difficult, and it is possible that Hunter's intransigence was the product of bad advice or a failure to realize that he was placing at risk his fundamental right to seek federal habeas relief. It is a close question, but we conclude that the district court should have given Hunter one more chance to address the merits of his habeas petition. Of course, if Hunter on remand refuses to communicate with the court, and with any counsel that may be appointed, the district court will have no choice but to dismiss his petition with prejudice.

### IV. Recusal.

■ We deny Hunter's request that a different district judge be appointed on remand. *See generally* 28 U.S.C. § 455. To support this request, Hunter points only to the district court's adverse rulings and actions in presiding over a case made unnecessarily difficult by Hunter's own recalcitrant behavior. There is nothing in the record suggesting "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* —— U.S. ——, ——, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994).

### V. Conclusion.

For the foregoing reasons, the district court's order of dismissal is reversed, and the case is remanded to Judge Whipple for further proceedings consistent with this opinion. On remand, the district court shall promptly establish a schedule for the purpose of bringing this case to a final resolution as expeditiously as the issues raised will permit. We note that, because this appeal concerned only procedural issues, we have given no consideration to the merits of Hunter's habeas claims.

■ There remains the important question of appointed counsel on remand. Congress clearly expects that petitioners under sentence of death will be represented by counsel in non-frivolous federal habeas proceedings. *See* 21 U.S.C. § 848(q)(8). But a petitioner may waive that statutory right. And the "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel." *Moore,* 706 F.2d at 540. *Accord, Meyer v. Sargent,* 854 F.2d 1110, 1113–14 (8th Cir.1988). That was the situation facing the district court when it granted Moran's motion to withdraw. Therefore, if Hunter wants appointed counsel after remand, he must file a formal motion for appointment of counsel in the district court. And if he wishes specific attorneys to be appointed, *or not to be appointed,* he must give specific and detailed reasons for his preferences, both in his written motion papers, and by oral testimony if so requested by the district court. Of course, the district court is not required to honor any request by Hunter regarding who should serve as appointed counsel. Instead, we leave the response to any motion for appointment of counsel on remand to that court's sound discretion, except that we instruct the court not to permit any dispute over the appointment of counsel to derail the schedule it establishes for the expeditious disposition of the case.