870 A.2d 217

**STATE of Maryland**

v.

**Bernard CAMPBELL a/k/a Sean Kelly.**

**No. 63, Sept. Term, 2004.**

Court of Appeals of Maryland.

March 15, 2005.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

Claudia A. Cortesee, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

In this case we are asked to consider whether the defendant, Bernard Campbell, a.k.a. Sean Kelly, made a request to discharge counsel when he expressed dissatisfaction with his attorney during trial. If Campbell's statements constitute a request to discharge counsel, we also must determine whether the trial court properly denied the request. We conclude that under the circumstances of this case, Campbell's expressed dissatisfaction with his attorney qualified as a request to discharge counsel that was properly denied by the trial court.

## I. Facts and Procedural History

On November 16, 2001, Destiny Campbell, then thirteen months old, was in the care and custody of her father, Bernard Campbell, when she suffered second degree burns to her lower torso and legs, a deep-colored bruise on her left cheek, a small cut across her nose, and a skull fracture. She was rushed to the hospital by her mother and treated by doctors, who called the Baltimore County Police Department to report Destiny's injuries. Baltimore County Police began an investigation of the incident, questioned Campbell, inspected his home, and obtained a warrant for Campbell's arrest. Campbell was arrested and charged with two counts of child abuse [1] and three counts of assault.[2]

---

1. Campbell was charged with two counts of child abuse under Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 § 35C, which stated in relevant part:

> (b) <Violation constitutes felony; penalty; sentencing.>—(1) A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child or a household or family member who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary for not more than 15 years.

Section 35C was recodified without substantive change as Md.Code (2002), § 3-601 of the Criminal Law Article.

2. Campbell was charged with two counts of first-degree assault and one count of the lesser included offense of second-degree assault under

Subsequently, Campbell's case was set for trial but was interrupted after Campbell became disruptive during the course of the proceedings. The trial judge declared a mistrial after an evaluation of Campbell's competency yielded a conclusion that, in fact, Campbell was competent but exhibited a history of malingering.

At the second trial, Campbell's attorney, who had been trial counsel for the first time as well, had the following colloquy prior to Campbell being brought into the courtroom:

> [CAMPBELL'S COUNSEL]: I['d] just like to just let the court be aware that I am a little bit apprehensive. I have a client that's off the hook, so to say. One of the reasons why we are still with that case is because when we were trying this case before Judge Cahill he went off and started throwing things and screaming and yelling in the court and the judge stopped the proceeding near the end of the State's case and had him NCR. He comes back with a high score in the history of malingering. That's what they said, Your Honor. So I told him today that we have to make an election [i.e., whether to elect a court or a jury trial].
>
> THE COURT: Okay.
>
> [CAMPBELL'S COUNSEL]: And he is determined not to make an election, he has a lot of things he'd like to say to the court. And he is threatening me and that's where my apprehension comes in, Your Honor.

Deputies escorted Campbell into the courtroom, and Campbell elected to be tried by a jury. Campbell then stated:

---

Md.Code (1957, 1996 Repl.Vol., 2000 Cum.Supp.), Art. 27 §§ 12A and 12A–1, which stated in part:

> (a) <Serious physical injury; use of a firearm.>—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.
>
> * * *
>
> (b) <Penalty.>—A person who violates this section is guilty of the felony of assault in the first degree and on conviction is subject to imprisonment for not more than 25 years.

Sections 12A and 12A–1 were recodified without substantive change as Md.Code (2002), §§ 3–202 and 3–203 of the Criminal Law Article.

[CAMPBELL]: Okay—I say Your Honor—I would like a postponement because of the fact that this guy didn't come see me, talk to me about this case in nine months since the first case in April. And on the behalf that I have somebody in this very same townhouse complex that daughter had got burnt by the same hot water that my daughter got burnt in and she—would like for her to come to court to testify as a witness saying that her daughter got burnt by mistake at the same place in the hot water. And I got this defense on my side this man do not know nothing about. And I need a postponement for me to subpoena her to court to say this in front of the jury so, therefore, I have a lot of things going for me in my defense that I like to bring up as well.

Campbell's attorney responded that he had visited Campbell "several times in the last month" and that Campbell's witness was not material to the case. The trial court recessed the case to have the administrative judge consider Campbell's request for postponement, which was denied. Following the recess, Campbell told the court that he "would like to challenge the array of the jury," to which the court explained that such a challenge could not be made until "there was an array." When asked by the court whether there was anything else, Campbell replied: "No. Not until the trial starts."

While the judge discussed the questions to be asked during *voir dire* of the potential jury members, Campbell indicated that he wanted to address the court, and the following dialogue occurred:

THE COURT: What would you want to say if you came up?

[CAMPBELL]: I bring it up later. We bring it up.

[CAMPBELL'S COUNSEL]: Your Honor, Mr.—just to let the court know because it's going to come up, Your Honor, my client has done some attempt to acquaint himself with the law while he's been locked up. He has done some reading in the area of the law. And he's read just enough to think now that he can take over this case. He wants to challenge the jury array. We don't know who is in the jury

array. And he wants, he has some argument about conflict of interests. I—

THE COURT: Who's conflict of interest?

[CAMPBELL'S COUNSEL]: I can't see it, Your Honor, but that's what he wants to talk to you about.

THE COURT: I have no idea what it's about.

[CAMPBELL]: That's—Your Honor, we bring it up, we will bring it up.

THE COURT: Okay.

[CAMPBELL]: We will bring it up.

The trial proceedings continued and at the close of the State's case-in-chief, Campbell's counsel asked for a brief recess because Campbell was "interested in the plea [agreement] that was initially offered [by the State]." After a short recess, Campbell's counsel stated that Campbell had refused the State's offer. Thereafter, Campbell again wanted to address the court and the following conversation ensued:

THE COURT: Yes sir. What do you want to say?

[CAMPBELL]: [My attorney], this guy right here, my public defender, Your Honor, he told me that just a few minutes ago that I already lost the case, the jury ain't like me, the jury, before even the case was started, the jury was already going to convict me any way.

I don't like this man as my representative. He ain't have my best interest at heart. He told me I am dumb just a few minutes ago, that I deserve this, that I should get all these years, and he is my representative. How is he going to tell me this and he representing me?

THE COURT: Well, let me ask you this; Would you rather have a lawyer tell you, I mean, let's say you could pick anybody, and one lawyer will tell you exactly what you want to hear, not what the lawyer really thinks from their experience. They will tell you, Oh, you know, it is going to be fine, everything is okay, you have a great shot, and everything like that, what you want to hear.

Or, would you rather have a lawyer tell you what the lawyer honestly thinks from their experience. I would think I would want, if it was me, I would rather have somebody tell me the truth when I am facing, what you are facing.

Now, all [your attorney] can do is give you his advice. That is all a lawyer can do.

[CAMPBELL]: That is a conflict with the attorney. That is a conflict. We had conflicts way before this ever started, man in the first trial.

THE COURT: Well, we are beyond that at this point, sir. We are now at the point where I guess we are ready to go to the jury if there is no other evidence.

[CAMPBELL]: This ain't no fair trial. The man told me he ain't going to represent me.

THE COURT: He is representing you. He hasn't done anything to not represent you.

[CAMPBELL]: Under force, because you all wouldn't let me fire him.

THE COURT: Okay. Well, now, he says you do not want to testify; is that correct?

[CAMPBELL]: Yes.

THE COURT: Okay. All right. Is there any other evidence, [Campbell's Counsel], that you have to offer?

[CAMPBELL'S COUNSEL]: No, Your Honor.

The trial proceeded with instructions to the jury and closing arguments. On the same day, the jury returned its verdict and found Campbell guilty of child abuse and first-degree assault. Thereafter, on April 2, 2003, the trial judge imposed a fifteen-year sentence for child abuse and a consecutive twenty-five-year sentence for first-degree assault.

On appeal to the Court of Special Appeals, Campbell argued that the Circuit Court's denial of his request to discharge counsel should be reversed because the judge did not properly inquire about the reasons for his request. In an unreported opinion, the Court of Special Appeals agreed with Campbell

that the trial judge should have made further inquiry based upon Campbell's statements that his attorney did not have his "best interests at heart" and that the two had "conflicts way before this ever started." In the view of the Court of Special Appeals, the Circuit Court briefly opined on the quality of Campbell's attorney rather than assessing the reasons for the request, which amounted to an abuse of discretion.

The State filed a petition for writ of certiorari in this Court to consider the following question:

> Did the Court of Special Appeals majority misapply *State v. Brown*, 342 Md. 404, 676 A.2d 513 (1996), to conclude that additional inquiry is required when a defendant raises a mid-trial complaint about his counsel, but does not explicitly ask to discharge counsel, and the trial court has responded to the complaint raised?

We granted the petition and issued the writ of certiorari, 382 Md. 688, 856 A.2d 724 (2004). We reverse the judgment of the Court of Special Appeals, even though we agree that Campbell's request was adequate to trigger a mandatory inquiry by the trial judge about Campbell's reasons for seeking to discharge his counsel, because we hold that Campbell's request occurred after "meaningful trial proceedings" had begun and the trial judge did not abuse his discretion in denying the request for discharge.

## II. Discussion

The State contends that the Court of Special Appeals erred in concluding that an additional inquiry into the reasons for a discharge of counsel request was required in this case pursuant to our decision in *State v. Brown*, 342 Md. 404, 676 A.2d 513 (1996). In the State's view, Campbell's statements to the trial court were "complaints" and did not rise to the level of a request to discharge counsel. Alternatively, the State argues that if Campbell's "complaints" are found to be a request to discharge counsel, the request was untimely because "meaningful trial proceedings" had commenced. Furthermore, the State asserts that the judge sufficiently acknowledged Camp-

bell's request and made a reasonable assessment that the request lacked merit.

Campbell argues that a request to discharge counsel is not required to be "artfully worded or precisely espoused," and that his statements amounted to a request for new counsel, which was not properly addressed by the lower court. Campbell maintains that in assessing a request for discharge of counsel even when made after the trial begins, the judge must still determine the reason for the request before deciding whether a dismissal should be allowed. According to Campbell, if the judge had conducted the proper inquiry the request to discharge might have been granted. Therefore, Campbell argues that the Court of Special Appeals was correct in its conclusion that the trial court had not properly ascertained the reasons for Campbell's request to discharge counsel.

### A. Request to Discharge Counsel

A defendant's request to discharge counsel implicates two fundamental rights that are guaranteed by the Sixth Amendment to the United States Constitution:[3] the right to

---

3. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Article 21 of the Maryland Declaration of Rights, also protective of the defendant's right to counsel, states:

> That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

"The right to counsel provisions of Article 21 of the Maryland Declaration of Rights are in *pari materia* with the sixth amendment."

the assistance of counsel and the right of self-representation. *See State v. Brown,* 342 Md. 404, 412–13, 676 A.2d 513, 517 (1996); *Fowlkes v. State,* 311 Md. 586, 589, 536 A.2d 1149, 1151 (1988); *Parren v. State,* 309 Md. 260, 262–63 523 A.2d 597, 598 (1987); *Leonard v. State,* 302 Md. 111, 119, 486 A.2d 163, 166 (1985); *Snead v. State,* 286 Md. 122, 123, 406 A.2d 98, 99 (1979). The right to counsel may be waived by the defendant provided that "he knows what he is doing and his choice is made with his eyes open." *Fowlkes,* 311 Md. at 589, 536 A.2d at 1151 quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942). A waiver of the right to counsel must "ordinarily [be] an intentional relinquishment or abandonment of a known right or privilege." *Leonard,* 302 Md. at 119, 486 A.2d at 167.

 In circumstances where a defendant elects to forego the assistance of counsel to represent himself, the court must permit the defendant to proceed *pro se* if the request is timely and unequivocal. *See Brown,* 342 Md. at 413–14, 676 A.2d at 518; *Fowlkes,* 311 Md. at 589, 536 A.2d at 1151, citing *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975). Because a defendant, by choosing to represent himself, is waiving the right to counsel, the court must conduct an inquiry to ensure that the defendant's waiver of counsel is knowing and intelligent. *See Brown,* 342 Md. at 414, 676 A.2d at 518, citing *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Fowlkes,* 311 Md. at 589, 536 A.2d at 1151; *Snead,* 286 Md. at 130, 406 A.2d at 102.

 Alternatively, a defendant may elect to discharge his counsel to obtain substitute counsel. Under these circumstances, the defendant must be afforded an opportunity to explain the reasons for the request and only may substitute counsel if good cause is shown, although the defendant is not

---

*Leonard,* 302 Md. at 119 n. 1, 486 A.2d at 167 n. 1 citing *Sites v. State,* 300 Md. 702, 712 n. 3, 481 A.2d 192, 197 n. 3 (1984); *Parren,* 309 Md. at 262, 523 A.2d at 598; *see also Fowlkes,* 311 Md. at 589, 536 A.2d at 1151.

entitled to substitute a specific appointed attorney if represented by the Office of the Public Defender. *See Brown,* 342 Md. at 414, 676 A.2d at 518; *Grandison v. State,* 341 Md. 175, 199–204, 670 A.2d 398, 410–11 (1995); *Fowlkes,* 311 Md. at 605, 536 A.2d at 1159.

In this case we first must decide whether Campbell's statements should have been construed as a request to discharge counsel. Maryland Rule 4–215(e) outlines the procedures a court must follow when a defendant desires to discharge his counsel to proceed *pro se* or to substitute counsel:

> If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or files does [sic] not reflect prior compliance.[4]

---

4. Maryland Rule 4–215(e) was adopted without substantive change from Rule 4–215(d), and was derived from former Maryland Rule 723c, which stated in relevant part:

> When a defendant indicates a desire or inclination to waive counsel, the court may not accept waiver until it determines, after appropriate questioning on the record in open court, that the defendant possesses the intelligence and capacity to appreciate the consequences of his decision[.]

The history of this Rule contains no commentary on the meaning of the phrase "*requests* permission to discharge an attorney."

The Rule was designed to protect both the right to counsel and the right to self-representation and ensures that decisions to waive counsel would pass constitutional muster. *Brown,* 342 Md. at 424, 676 A.2d at 523.

The Rule, however, is silent as to what level of discourse is required to discharge counsel. This Court addressed that issue in *Snead v. State,* 286 Md. 122, 406 A.2d 98 (1979), in which we considered whether a defendant's statements were sufficient to invoke the right of self-representation. At trial, the defendant, Richard Lee Snead, filed a motion for continuance and also orally expressed dissatisfaction with his attorney by stating: "I feel as though that [sic] I would like to get a delay in this case to get my nephew and my family time to get another attorney. From my understanding, [my attorney], the way he is talking, I am guilty before I even come in the courtroom." *Id.* at 125, 406 A.2d at 100. The trial court denied Snead's motion for continuance and stated that his attorney would not be discharged, after which the following dialogue occurred:

> [SNEAD]: He told me every time he come to see me, he tell me I am guilty before I come in the courtroom. Why should I have a man—he feels that way, before I come into the courtroom.
>
> THE COURT: Make your mind up [your attorney] is going to represent you.
>
> [SNEAD]: I can't get time for my people to get me no attorney?
>
> THE COURT: No, sir.
>
> [SNEAD]: I don't want no attorney then.

*Id.* at 126, 406 A.2d at 100.

Snead was convicted, the Court of Special Appeals affirmed, but this Court reversed, reasoning that, "any statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient." *Id.* at 127, 406 A.2d at 101. In so holding, we found that Snead's statements were sufficient to require an inquiry by

the trial court as to whether the defendant wanted to represent himself. *Id.*

We iterated this conclusion in *Leonard v. State,* 302 Md. 111, 486 A.2d 163 (1985), in which, the defendant, Leonard, requested a continuance to discharge his attorney and proceed *pro se:*

> THE COURT: I understand you want to conduct your own defense.
>
> [LEONARD]: That's the only choice I got.
>
> THE COURT: I take it your answer is yes.
>
> [LEONARD]: It's got to be yes. It's the only choice I have.
>
> THE COURT: Alright. I'm going to allow [your current attorney] to stay....
>
> [LEONARD]: I don't want you to allow him to do nothing. I have a right to do it [ ].

*Id.* at 125, 486 A.2d at 170. Leonard further stated that his attorney was "no legal advisor for [him]" and that he did not want his attorney at the defense table. *Id.* The judge denied Leonard's request to represent himself, the Court of Special Appeals affirmed, *id.* at 118, 486 A.2d at 165, but this Court reversed, holding that Leonard's statements were an obvious expression of his desire or inclination to represent himself. *Id.* at 125, 486 A.2d at 170. Quoting from *Snead,* we stated that "[a]ny statement by the defendant from which the court could reasonably conclude that the defendant desired self-representation would be sufficient." *Id.* at 124, 486 A.2d at 169. Moreover, we explained that "a defendant is not required to utter a talismanic phrase so as to place the court on notice that he desires self-representation." *Id.*

Further, in *State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996), statements made by defense counsel were treated as a request to discharge counsel. The defendant stood indicted on various counts of drug distribution and possession, *id.* at 409–10, 676 A.2d at 516, and prior to testimony by the State's first witness, the following dialogue occurred:

[DEFENDANT'S COUNSEL]: My client wishes to dismiss me at this point in time.

THE COURT: For what reasons?

[DEFENDANT'S COUNSEL]: I guess on the advice of his father.

[DEFENDANT'S FATHER]: You can't represent him. You don't know nothing about his case, sir.

THE COURT: We are in the middle of the trial. We will proceed. Go ahead.

[DEFENDANT'S COUNSEL]: Am I—

THE COURT: You are still counsel, yes.

*Id.* at 429–30, 676 A.2d at 526. The judge denied the request to discharge counsel, which was reversed by the Court of Special Appeals. *Id.* at 411, 676 A.2d at 516. This Court held that the trial judge was required to conduct an inquiry as to why the defendant made the request once "the defendant *indicate[d] a desire* to dismiss counsel." *Brown,* 342 Md. at 425, 676 A.2d at 523 (emphasis added); *see also Fowlkes v. State,* 311 Md. 586, 536 A.2d 1149 (1988) (holding that the defendant's statements that his counsel did not have "the true evidence," and his comments, "I don't think she is any help to me anyway. If possible I would rather get rid of her, get a new attorney" were sufficient to warrant the trial court's inquiry of the defendant's desire of self-representation); *State v. Renshaw,* 276 Md. 259, 264, 347 A.2d 219, 224 (1975) (finding that the appropriate inquiry was made by the trial court when the defendant expressed no confidence in trial counsel and requested different counsel).[5]

---

5. Courts from the federal circuits and our sister states also have addressed the sufficiency of a defendant's statements to constitute a request to discharge counsel. *See Hunter v. Delo,* 62 F.3d 271, 274–75 (8th Cir.1995) (holding that a defendant's expressed dissatisfaction with his counsel amounted to a motion to discharge and substitute counsel); *State v. Jenkins,* 70 Conn.App. 515, 800 A.2d 1200, 1206–07 (2002)(finding that the defendant's dissatisfaction with appointed counsel was a clear indication that he did not want to be represented by counsel); *People v. Lee,* 95 Cal.App.4th 772, 115 Cal.Rptr.2d 828, 833 (2002) (stating that defendant's objections to his counsel's failure to file a

In the case *sub judice*, Campbell's statement regarding his dissatisfaction with his attorney, if timely, should have triggered an inquiry by the court as to whether Campbell wanted to discharge his counsel. Campbell made several statements to the court about his dissatisfaction with his attorney: "I don't like this man as my representative;" "We had conflicts way before this ever started, man in the first trial;" "The man told me he ain't going to represent me;" "He ain't have my best interest at heart;" "[Y]ou all wouldn't let me fire him." As we noted in *Snead* and *Leonard*, Campbell's request did not need to be a talismanic phrase or artfully worded to qualify as a request to discharge, so long as a court could reasonably conclude that Campbell sought to discharge his counsel. *See Snead*, 286 Md. at 127, 406 A.2d at 101; *Leonard*, 302 Md. at 124, 486 A.2d at 170. Based upon Campbell's expressed dissatisfaction with his attorney, a court reasonably could deduce that Campbell sought to discharge his counsel. *See Brown*, 342 Md. at 429–30, 676 A.2d at 526; *Snead*, 286 Md. at 127, 406 A.2d at 101; *Leonard*, 302 Md. at 124, 486 A.2d at 170.

**B. Right to Discharge Counsel After Meaningful Trial Proceedings Begin**

Our focus now must shift to the logistical requirements imposed upon a request to discharge counsel. We have held that a defendant's right to waive counsel and proceed *pro se* or to substitute counsel is more limited once "meaningful trial proceedings" have begun, because the mandatory nature of Rule 4–215(e) is inapplicable, and the "decision to permit discharge of counsel after trial has begun is within the sound discretion of the trial court." *See Brown*, 342 Md. at 420, 676 A.2d at 521. In the exercise of discretion, the judge is required to "conduct an inquiry to assess whether the defen-

---

peremptory challenge did not qualify as a request to discharge counsel); *People v. Clark*, 94 Ill.App.3d 295, 49 Ill.Dec. 871, 418 N.E.2d 891, 893 (1981) (concluding that "*any indication* by defendant that he wishe[s] to discharge counsel and represent himself," the court must admonish the defendant of his right to counsel) (emphasis added).

dant's reason for dismissal of counsel justifies any resulting disruption," *id.* at 428, 676 A.2d at 525, through consideration of the following factors:

> (1) the merit of the reason for discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel.

*Id.*

In *Brown,* we examined what constitutes "meaningful trial proceedings" and noted that "the exact point in time when the right to discharge counsel is curtailed," can differ. *Id.* at 422, 676 A.2d at 522.[6] Quoting from the United States Court of Appeals for the Fifth Circuit, in *Chapman v. United States,* 553 F.2d 886 (5th Cir.1977), we held:

> A defendant must have a last clear chance to assert his constitutional right. If there must be a point beyond which the defendant forfeits the unqualified right to defend pro se, that point should not come before meaningful trial proceedings have commenced. We have not entered the age of "stop-watch jurisprudence[.]"

*Id.* (internal citation omitted).

Since *Brown,* we have had occasion in *State v. Wischhusen,* 342 Md. 530, 677 A.2d 595 (1996), to determine whether "meaningful trial proceedings" had begun when a request to dismiss counsel was made. In *Wischhusen,* defense counsel was not present when the jury, during deliberations, asked the judge a clarification question. *Id.* at 533, 677 A.2d at 596. The judge, prior to reinstructing the jury, asked the defendant if he wanted to have his counsel present, to which the defendant replied in the negative. *Id.* at 535, 677 A.2d at 597. The

---

6. This Court explained that other jurisdictions have found that the right to discharge counsel is *per se* untimely if asserted after the jury has been selected; while other courts have "established impanelment of the jury as the 'cut-off' point." *Brown,* 342 Md. at 422, 676 A.2d at 522 (internal citations omitted).

defendant was convicted, and the Court of Special Appeals, reversed holding that the judge should have obtained a waiver of counsel pursuant to Rule 4–215(e). *Id.* We reversed and held that "although Rule 4–215 applies *up to and including the beginning of trial,* the Rule does not apply after meaningful trial proceedings have commenced." *Id.* at 543, 677 A.2d at 601 (emphasis added).[7]

In the present case, Campbell made a request to discharge counsel at the close of the State's case-in-chief and after defense counsel had announced that Campbell had elected to remain silent. We find that "meaningful trial proceedings" definitely had begun, rendering Rule 4–215(e) inapplicable.

The trial judge did ask Campbell if he wanted to address the court after the State had rested its case, to which Campbell stated his reasons for wanting to discharge his attorney, which included alleged conflicts existing between

---

7. Some federal courts have held that the process of jury selection signals when "meaningful trial proceedings" have begun. *See United States v. McKenna,* 327 F.3d 830, 844 (9th Cir.2003) (holding that a request will only be deemed timely if made prior to empaneling the jury); *United States v. Young,* 287 F.3d 1352, 1354–55 (11th Cir.2002) (stating that meaningful trial proceedings had commenced when the parties selected the jury); *United States v. Jones,* 938 F.2d 737, 743 (7th Cir.1991) (stating that the defendant's request, made after the jury had been empaneled, was untimely because meaningful trial proceedings had commenced); *United States v. Betancourt–Arretuche,* 933 F.2d 89, 96 (1st Cir.1991) (holding that defendant's request to discharge counsel was untimely because the jury had been empaneled); *United States v. Lawrence,* 605 F.2d 1321, 1325 (4th Cir.1979) (finding that a defendant's request to discharge counsel must occur before meaningful trial proceedings have commenced, which is prior to selection of the jury); *Chapman v. United States,* 553 F.2d 886, 895 (5th Cir.1977) (finding request to dismiss counsel to be untimely if made before the jury is selected). Other federal courts also have held that "meaningful trial proceedings" had begun at the conclusion of the State's case. *See United States v. Washington,* 353 F.3d 42, 46 (D.C.Cir.2004) (holding that meaningful trial proceedings had commenced when the defendant asked to dismiss counsel after the State had rested its case) *United States v. Merchant,* 992 F.2d 1091, 1095–96 (10th Cir.1993)(explaining that defendant's request was untimely because the State had already completed most of its case).

himself and his attorney during the prior and current trials; and his lawyer's comments that he would not represent him, that the jury was going to convict him [Campbell], and that he should receive a long sentence. In addition, Campbell's attorney explained the problems that had existed between the two. Because Campbell's reasons for wanting to dismiss his counsel were apparent based upon his statements, the trial judge was not required to make any further inquiry.

After having the dialogue, the trial judge denied Campbell's request. Balancing the *Brown* factors against the countervailing considerations of permitting Campbell to discharge counsel compels us to agree. *See Brown,* 342 Md. at 428–29, 676 A.2d at 525. The trial judge's response to Campbell's request reflected his assessment that the request lacked merit: that Campbell was incorrect in stating that his counsel did not act in his best interest because defense counsel had expressed a negative view to Campbell about the outcome of the case. The other *Brown* factors, whether the discharge of counsel would have a disruptive effect on the proceedings, the timing of the request, and the complexity and stage of the proceedings, likewise support the trial court's decision because Campbell's request came after the State had already concluded its case-in-chief and only the closing arguments and the jury instructions remained. The disruptive effect of Campbell dismissing his attorney and either proceeding *pro se* or substituting counsel so late in the proceedings supports our expression in *Brown* that requests to discharge should not be used as "eleventh hour" tactics to delay the trial or to confuse the jury, and "must be limited to prevent undue interference with the administration of justice." *Brown,* 342 Md. at 414–15, 676 A.2d at 518. Consideration of the final *Brown* factor, whether any prior requests had been made, further yields the conclusion that the judge did not abuse his discretion in denying Campbell's request; the record does not reflect that prior requests to dismiss counsel were made, but that when Campbell had been given an opportunity to address the court he elected to "bring it up later."

Judge Raker, when speaking for this Court in *Brown,* was clear that "[a]lthough the trial judge need not engage in a full-scale inquiry pursuant to Rule 4–215, the judge must at least consider the defendant's reason for requesting dismissal before rendering a decision." *Id.* at 431, 676 A.2d at 526. Here, the trial judge considered the reasons for Campbell's request to discharge his counsel and articulated reasons for the denial of the request based upon the *Brown* factors.

## III. Conclusion

We, therefore, conclude that Campbell's statements to the trial court qualified as a request to discharge counsel. When Campbell made the request after meaningful trial proceedings had commenced, the judge did not abuse his discretion when he denied Campbell's request.

***JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.***

BELL, C.J. and RAKER, J., Dissent.

RAKER, J., dissenting, in which BELL, C.J., joins.

I would affirm the judgment of the Court of Special Appeals and hold that under the circumstances of this case, the trial judge should have made further inquiry of the defendant as to the reasons he wished to discharge his counsel.

The Court of Special Appeals, in an unreported opinion, reversed the judgment of the Circuit Court for Baltimore County, reasoning as follows:

> "In this case, the circuit court did not determine the reason for the requested discharge of counsel. Appellant articulated that counsel 'ain't have my best interest at heart,' that the two had 'conflicts way before this ever started,' and that counsel 'told me he ain't going to represent me.' Although appellant's statements were made after he and counsel had discussed the plea offer, the circuit court did not determine if appellant's concerns resulted from counsel's assessment of

the case and recommendation to plead guilty or from something entirely different. Instead, the circuit court briefly opined on the merits of an attorney who would 'tell me the truth [about] what I am facing.' Either the circuit court did not recognize the request to discharge counsel and did not exercise its discretion or, if it did, it made no inquiry as to the reason and did not provide the rationale for denying appellant's request. Therefore, we are constrained to reverse the judgments of the circuit court."

The intermediate appellate court was right on in its analysis, especially when considered in context of the earlier colloquy between defense counsel and the court. Defense counsel told the court that he was apprehensive, that his client "was off the hook," and that "he is threatening me." Respondent told the court before the trial started that he wanted a postponement (which was denied subsequently by the administrative judge) and that "this guy [defense counsel] didn't come see me, talk to me about this case in nine months since the first case in April."

The record does not establish that the trial court considered the reasons for respondent's request to discharge his counsel.

Chief Judge BELL has authorized me to state that he joins in this dissenting opinion.